**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Roger BRANSON, Defendant/Appellant.**

**No. 84–1025.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1985.

Decided March 29, 1985.

Eric Fisher, Asst. U.S. Atty., San Francisco, Cal., for plaintiff/appellee.

Thomas J. Ferrito, Los Gatos, Cal., for defendant/appellant.

Before PREGERSON and FERGUSON, Circuit Judges, and STEPHENS,* District Judge.

FERGUSON, Circuit Judge:

Defendant Roger Branson was convicted by a jury of knowingly passing counterfeit money under 18 U.S.C. § 472. He appeals this conviction on the grounds his constitutional rights were violated by several references the prosecution made to his silence during his interrogation after being read the *Miranda* warning. We agree that the prosecutor should not have so used Branson's protected silence and, therefore, we reverse.

Branson purchased a money order with three $100 bills and one $20 bill. These bills proved to be counterfeit. When he was traced from the money order and interrogated by the Secret Service, Branson admitted having given the bills, but he denied knowing they were counterfeit. He refused to answer when asked where he had obtained the bills. When he was later arrested, and after being read his *Miranda* rights, he remained silent when asked to divulge the source of the bills. He did not testify at his trial.

The prosecutor tried to prove Branson "knowingly" gave the bills by repeatedly bringing to the jury's attention the fact that Branson did not tell the Secret Service the source of the funds.[1] Branson did not object to this use of his silence at the trial

because any such objection only would have compounded the prejudice against him.

This failure of Branson's to object to the comments requires us to find a "plain error" in the proceedings below before we review. Fed.R.Crim.P. 52(b). Branson urges that the prosecutor's comments clearly referred to his silence during his interrogation after being read the *Miranda* warnings, and, therefore, the comments violated his constitutional rights to silence. The government submits that Branson waived his Fifth Amendment rights by answering some questions, and his failure to respond to one question did not constitute a revocation of that waiver. Therefore, the prosecutor's comments were proper, and Branson's rights were not violated. The government relies on *United States v. Lorenzo*, 570 F.2d 294 (9th Cir.1978), to show Branson's conduct failed to revoke his waiver. This reliance is misplaced.

In *Lorenzo*, the defendant told a full exculpatory story in the middle of which he refused to answer one question but then resumed talking with the officers. We stated that the Ninth Circuit recognizes both total and selective revocations of a waiver of *Miranda* rights, but that Lorenzo could not be said to have revoked any waiver in light of the willingness with which he began to talk and continued to do so after failing to answer a single question.

---

\* The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

1. During the examination of Secret Service Agent Adams, the prosecution asked:

Q: Did he remember where he had received the three one hundred dollar bills and the one twenty dollar bill which he used to buy the October 13th money order?

A: I don't think he wanted to respond to that.

During redirect examination on the same witness, the prosecutor asked:

Q: ... you just testified that people can innocently pass counterfeit bills, is that correct?

A: That's correct.

Q: Isn't it also true that when an innocent person passes a counterfeit bill he's more than willing to say where it came from?

[Defense counsel]: Objection.

During the government's closing argument, the prosecutor said:

Now, even assuming that he isn't somehow associating with known conspirators, wouldn't an honest person, an innocent person have said to the Secret Service, hey, I didn't know this was counterfeit, I just got it somehow.... [A]gain, would a [sic] honest, innocent person refuse to cooperate to the extent that Mr. Branson did? ... He claims he didn't know they were counterfeit. Yet he refused to cooperate with the Secret Service and tell them where he received those bills.... Well, if he is such an innocent victim ... why didn't he say so? Why didn't he say, oh my boss did it, he is trying to get me or something. Why didn't he just say that? ... To argue that the defendant is a victim of his employer's illegal activity clearly ignores the fact that he refused to say where he got the bills.

■ These facts distinguish *Lorenzo* from the instant appeal. Branson offered no exculpatory story and did not resume talking when asked the source of the bills. The arresting officer testified he knew Branson "didn't want to talk to us concerning the investigation at that point." "Total revocation, of course, requires only that the individual indicate in some manner that he wishes to remain silent." *United States v. Lorenzo,* 570 F.2d at 298 n. 1 (citing *Miranda v. Arizona,* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966)). Branson succeeded in indicating to the arresting officers he wished to remain silent, and, therefore, totally revoked his waiver. Any use of that protected silence is plain error.

Our holding in *Scarborough v. Arizona,* 531 F.2d 959 (9th Cir.1976), is dispositive of this appeal. There the defendant was granted a new trial because the prosecutor commented extensively to the jury that the defendant's guilt could be inferred by the fact he remained silent at the time of his arrest. Scarborough had refused to make an exculpatory statement or answer questions and did not testify at his trial. In affirming the district court's grant of habeas relief to Scarborough, we said, "[t]o hold that the State in this circumstance may utilize the defendant's silence against him would violate the spirit of the Fifth Amendment." *Id.* at 961. The same rationale applies to Branson.

■ The government further argues that even if the prosecutor's misconduct violated Branson's constitutional rights, the error was harmless beyond a reasonable doubt and did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The government submits that its other evidence was so strong that the absence of the misconduct would not have changed the jury's verdict, and therefore reversal is not warranted. *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). The facts force us to disagree with the government's argument.

When the jury had been deliberating about two hours, they sent a note to the district judge asking if they could base their decision on Branson's silence when asked the source of the money. The judge replied that they could base the decision on any evidence they thought relevant. The reasonable inference is that the consideration of Branson's silence did contribute to the verdict, and it was, therefore, not harmless.

Further, the note served to put the trial judge on notice as to the effect of the prosecutorial misconduct, and it gave the trial court an opportunity to correct the plain error. The court failed to do so. In *United States v. Segna,* 555 F.2d 226 (9th Cir.1977), we held that a reversal may be justified in a case where "the probability is high that the error materially affected their verdict." *Id.* at 231. *Branson* is that case. Even though the judge did give the standard jury instruction on the effect of the failure of the accused to testify, this was clearly insufficient in view of the jury's note.

Therefore, since there was a plain error which affected substantial rights and directly contributed to Branson's conviction, we REVERSE and REMAND for a new trial.