UNITED STATES of America,
Plaintiff-Appellee,

v.

Jorge Luis PUIG, Manuel Pena, Jr.,
and Alfredo Equed-Ibarran,
Defendants-Appellants.

No. 86–5195
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1987.

Joaquin N. Fernandez, Miami, Fla., for Puig.

Raymond J. Takiff, Coconut Grove, Fla., for Pena.

Theodore J. Sakowitz, Federal Public Defender, Richard C. Klugh, Jr., Asst. Federal Public Defender, Miami, Fla., for Equed-Ibarran.

Leon B. Kellner, U.S. Atty., Linda Collins Hertz, Chief Appellate Section, Mayra Reyler Lichter, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for United States.

Before GODBOLD, VANCE and JOHNSON, Circuit Judges.

PER CURIAM:

On April 5, 1985 Customs Patrol Officer LeGasse stopped and boarded a 28 foot boat in the Government Cut area of Florida. The vessel was taken to the Miami Beach Police dock where the agent seized approximately 317 kilograms of cocaine hidden in a secret compartment in the boat's bulkhead. Aboard the boat were defendants Puig, Pena, and Equed-Ibarran. The three were indicted for the possession of cocaine with intent to distribute (21 U.S.C. § 841(a)(1)), conspiracy to possess cocaine with intent to distribute (21 U.S.C. § 846), importation of cocaine (21 U.S.C. §§ 952(a) and 960(a)(1)), and conspiracy to import cocaine (21 U.S.C. § 963). Defendants moved to suppress the seized cocaine and their statements to customs agents at the time of their arrest. After four days of evidentiary hearings, the magistrate denied these motions. A jury returned verdicts of guilty as to all defendants on all counts. Defendants now appeal. We affirm.

■■■■ Appellants' principal grievance is that the district court failed to rule the search and seizure of their boat to be violative of the Fourth Amendment. Defendants claim that Officer LaGasse acted improperly in towing their vessel to the Miami Beach Police dock and drilling holes in it; therefore, the seized cocaine and their later statements should be excluded as fruits of an illegal search. We conclude, however, that the search was entirely consistent with constitutional standards.[1] Officer LeGasse had been alerted by customs agents engaged in aerial surveillance that defendants' boat had entered the United States from foreign waters. Consequently, LeGasse was entitled to undertake a border search of the boat. *United States v. Moreno*, 778 F.2d 719, 721 (11th Cir.1985); *United States v. Rojas*, 731 F.2d 707, 709 (11th Cir.1984).[2] Border searches are governed by the reasonableness requirement of the Fourth Amendment. *See United States v. Villamonte-Marquez*, 462 U.S. 579, 588, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983).[3] This court has applied this reasonableness requirement by adopting a flexible test which adjusts the strength of the suspicion required for a particular search to the intrusiveness of that search. *United States v. Vega-Barvo*, 729 F.2d 1341, 1344 (11th Cir.), *cert. denied*, 469 U.S. 1088, 105 S.Ct. 597, 83 L.Ed.2d 706 (1984). Here, Officer LeGasse initially boarded and conducted an unintrusive visual inspection of the boat. This visual inspection revealed a number of factors which were inconsistent with the "fishing trip" story given by the defendants and which raised a reasonable suspicion based on Officer LeGasse's experience that illegal contraband was hidden in the unaccounted for section beyond the forward bulkhead. It was thus reasonable for the agent to undertake a more thorough search at the Miami Beach Police dock. *See United States v. Sarda-Villa*, 760 F.2d 1232 (11th Cir.1985).[4]

■■■■ Appellants emphasize the intrusiveness of LeGasse's drilling into the plywood section of the hull, decrying "the permanent physical destruction of an integral

1. In addition to defending the reasonableness of the search, the government argues that appellants lack standing to challenge the search of the boat. *See United States v. Lopez*, 761 F.2d 632 (11th Cir.1985); *United States v. Sarda-Villa*, 760 F.2d 1232 (11th Cir.1985). However, since the district court relied on other grounds and made no factual findings concerning defendants' legitimate expectations of privacy, we do not reach this issue.

2. In their motion to suppress and in their briefs to this court, defendants concede that the search of the vessel was a border search. The district court also found that the search was a "stipulated border search."

3. "It is well established that border searches are not subject to constitutional probable cause and warrant requirements." *United States v. McMurray*, 747 F.2d 1417, 1419-20 (11th Cir. 1984).

4. It should be noted that the search at the Miami Beach Police dock remained a border search. The dock, as the first practical detention point at which to conduct the search, constituted "the functional equivalent of the border." *See United States v. Carter*, 760 F.2d 1568, 1577 (11th Cir.1985); *United States v. Garcia*, 672 F.2d 1349, 1365-66 (11th Cir.1982).

part of the vessel" and terming it an act which "violate[d] the integrity of permanent parts of the vessel." Yet this surely overstates the damage wrought by a small hole that could easily be plugged and repaired. The drilling of the hole was the only means to reach the secret compartment. The government must be permitted to take such limited steps when it has established a reasonable suspicion of illegal activity.[5] In *United States v. Sarda-Villa*, 760 F.2d 1232, 1239 (11th Cir.1985), an ax and a crowbar were used in a border search to gain access to false fuel tanks. This search was found to be constitutional. As the *Sarda-Villa* court reasoned:

> [O]nce the officers have the right to conduct a thorough search, they are entitled to use reasonable means to effect that search. As we have recently noted, "[o]therwise, a person could preclude inspection of a vessel's interior simply by covering over all entrances to the interior so that some damage to the vessel would be inevitable if officers attempted to conduct a full-scale search."

760 F.2d at 1239 (quoting *United States v. Andreu*, 715 F.2d 1497, 1501 n. 13 (11th Cir.1983)). *See also United States v. Moreno*, 778 F.2d 719, 721–22 (11th Cir.1985) (drilling of holes and use of electric saw during border search found constitutional).[6]

■ Defendants also claim that the district court erred in admitting into evidence their statements at the time of their arrest. After finding the drugs and arresting the defendants, Officer LeGasse contacted the customs communications center through his portable radio. When LeGasse advised the communications center that he had found approximately 50 pounds of cocaine, defendant Pena spontaneously stated "No man, there was approximately 316 kilos of cocaine in there." Equed-Ibarran then chimed in that he thought that the amount was actually 315 kilos of cocaine. Officer LeGasse then asked Puig if he had any knowledge of what was contained in the boat Puig responded, "Yeah, maybe—I don't know." As LeGasse resumed his efforts to get full access into the hidden compartment containing the cocaine, Pena and Equed-Ibarran began to explain to the agent how the compartment had been built. They went so far as to inform the agent that the spatula used in the fiberglassing process was located in the bow of the boat. Pena and Equed-Ibarran continued to discuss the boat and their drug activities on their way to customs headquarters. At customs headquarters, Pena and Equed-Ibarran gave full statements about their drug smuggling activities, including details about where they picked up the drugs, how much money was exchanged, and where they were to deliver the drugs.

Appellants now assert that these statements were not made voluntarily and, instead, were forced from them under duress. Defendants do not dispute that they were immediately advised of their *Miranda* rights by LeGasse upon their arrest and advised again by the agents at customs

---

5. Having concluded that the search undertaken by Officer LeGasse was based on a "reasonable suspicion" of illegal activity, we do not find it necessary to decide whether a lesser level of suspicion would have been sufficient. *Compare United States v. Sandler*, 644 F.2d 1163 (5th Cir.1981) (en banc) (no articulable suspicion is required for pat-down search at border); *with United States v. Himmelwright*, 551 F.2d 991 (5th Cir.), *cert. denied*, 434 U.S., 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977) (reasonable suspicion required for strip search at border). *Cf. United States v. Moreno*, 778 F.2d 719 (11th Cir.1985) (border search into hull of boat without finding of reasonable suspicion); *United States v. Sarda-Villa*, 760 F.2d 1232 (11th Cir. 1985) (border search into hull of boat based on "reasonable suspicion").

6. At the time that Officer LeGasse decided to drill into the plywood, he had additional evidence to support a reasonable suspicion that illegal drugs were hidden in the space. As the government's brief notes:

> [B]y the time CPO LeGasse drilled the hole, he had observed the inconsistency of the oil sprayed on the engine room walls, been unable to gain access into the fuel compartment, noticed a marked lack of freeboard, discerned that the batteries had been removed, discovered that the forward engine room wall was made of non-marine plywood, seen the unusable fishing reel and inedible fish; and had concluded that the unaccounted area was too large for a fuel tank on a 28 ft. vessel.

headquarters; nor do they dispute that they understood these rights and waived them prior to making any statements. Defendants maintain, however, that the police coerced their waiver of rights and subsequent statements by detaining them at the Miami Beach Police dock and by not permitting them to make telephone calls. This argument borders on the nonsensical. Certainly an arrest restricts one's liberty, but such a restriction does not amount to duress or coercion. If it did, every custodial interrogation would be ruled invalid. Furthermore, appellants at no time expressed a desire to make a phone call at the dock or the customs office; suspects are generally permitted to place a telephone call when they arrive at the Metropolitan Correctional Center. Their wait on the dock during LeGasse's search was not oppressive, lasting only a short time in not uncomfortable physical conditions. The agents' adherence to established constitutional procedures is evident from their treatment of Puig. Puig refused to waive his rights and asked for a lawyer at customs headquarters; as a result, he was not interviewed and made no statements. It is clear from the totality of the circumstances that appellants' statements were voluntarily made and properly admitted into evidence. *See United States v. Vera,* 701 F.2d 1349, 1364 (11th Cir. 1983).[7]

■ Appellants also complain that the government improperly presented testimony commenting on Puig's post-*Miranda* silence. During the testimony of DEA agent Perez, the agent was supposed to testify only about Pena and Equed-Ibarran's ac-

tions at customs headquarters. Perez, nevertheless, stated in his direct testimony that "Mr. Puig didn't want to make any statements so, basically, we just did identifying information." We agree that this type of reference to a defendant's silence should be avoided. The facts of this case do not warrant reversal, though. Significantly, Puig's post-arrest silence had been brought to the jury's attention earlier by his own counsel's cross-examination of a prior witness.[8] Perez's passing remark also was never stressed or even mentioned again by the prosecutor. The jury's judgment in rejecting Puig's contention that he was "merely present" aboard the vessel and finding him guilty beyond a reasonable doubt was based on strong and irrefutable evidence. Any error resulting from Perez's remark was clearly harmless. *See, e.g., United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Suggs,* 755 F.2d 1538, 1540–41 (11th Cir.1985).[9]

■ Lastly, appellants protest the district court's denials of their motions for severance. This court will only review a trial court's refusal to grant a severance under Fed.R.Crim.P. 14 for abuse of discretion. *United States v. DeSimone,* 660 F.2d 532, 539 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982). To establish an abuse of discretion, a defendant must demonstrate that without severance he was unable to receive a fair trial and suffered compelling prejudice. *United States v. Horton,* 646 F.2d 181, 186 (5th Cir. Unit A), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70

---

7. Some of their statements were spontaneously volunteered and therefore may not have been within the protection of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Rhode Island v. Innis,* 446 U.S. 291, 299–300, 100 S.Ct. 1682, 1688–89, 64 L.Ed.2d 297 (1980); *United States v. Suggs,* 755 F.2d 1538 (11th Cir. 1985).

8. During the cross-examination of Special Agent Benavente by Puig's attorney, the following exchange occurred:

 Q. Special Agent Benavente, you didn't take a statement from Mr. Puig, did you?
 A. I did not.

Q. Did Mr. Fields take a statement from Mr. Puig?
A. I don't know.

9. Defendants rely heavily on *United States v. Branson,* 756 F.2d 752 (9th Cir.1985). *Branson,* however, was grounded on two salient facts. In *Branson,* the prosecutor referred repeatedly to the defendant's silence in his questioning and his closing argument. A note from the jury to the trial judge also made it clear that the defendant's silence was a significant factor in their deliberations. Absent these two facts, *Branson* is not applicable here.

L.Ed.2d 388 (1981); *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir.1978). For an assertion of antagonistic defenses to satisfy this test, the defenses must be irreconcilable and mutually exclusive. *United States v. Magdaniel-Mora*, 746 F.2d 715, 718 (11th Cir.1984). Pena's defense that he was a law abiding citizen who had previously taken fishing trips to Bimini was not directly antagonistic to Equed-Ibarran's and Puig's defense that there was insufficient evidence to convict them of these charges. The trial judge also gave cautionary instructions to limit any prejudicial effect from statements or evidence admissible as to only one defendant. We thus reject defendants' contention that they did not receive a fair trial.

AFFIRMED.