[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 687 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 688 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 689 
OPINION
Rather than agree to a two-week trial continuance requested by his defense counsel due to a scheduling conflict, Ringo Lawrence, charged with two serious drug offenses, asserted his Sixth Amendment right underFaretta v. California (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (Faretta) to represent himself. After a half-day of jury selection, Lawrence thought better of his decision and asked that counsel be appointed to represent him at trial. The trial court denied the request and also denied a second request made by Lawrence at the conclusion of jury selection. Did the trial court err in refusing to permit Lawrence to withdraw his Faretta waiver? If so, is the erroneous denial of a request to withdraw a Faretta waiver state law error only or is it federal constitutional error? If federal constitutional error, is that error structural or subject to harmless error analysis under Chapman v.California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] (Chapman)? Under the circumstances of this case the trial court abused its *Page 690 discretion in denying Lawrence's request for counsel at the end of the first day of trial. Because deprivation of counsel at a critical stage of a criminal trial is federal constitutional error that affects the framework within which the trial proceeds, "with consequences that are necessarily unquantifiable and indeterminate," the error is structural and reversal is required without analysis of prejudicial effect. (Sullivan v. Louisiana (1993) 508 U.S. 275, 282 [124 L.Ed.2d 182,113 S.Ct. 2078]; see United States v. Gonzalez-Lopez (2006) 548 U.S. ___, ___ [165 L.Ed.2d 409, 126 S.Ct. 2557].)
 FACTUAL AND PROCEDURAL BACKGROUND 1. The Charges
 Lawrence, apprehended in connection with an undercover drug investigation, was charged by information with one count of selling, transporting or offering to sell a controlled substance (Health Saf. Code, § 11352, subd. (a)) and one count of possession of cocaine base for sale (Health Saf. Code, § 11351.5). The information specially alleged Lawrence had been released from custody on bail or his own recognizance at the time of the offenses (Pen. Code, § 12022.1) and had previously been convicted of two felonies within the meaning of Health and Safety Code section 11370.2, subdivision (a).[1] Lawrence pleaded not guilty and denied the special allegations.
 2. The Grant of Lawrence's Request for Self-representation
 On September 6, 2005, at the request of Lawrence's counsel, but over Lawrence's objection, the trial court (Hon. Marsha N. Revel) continued trial of Lawrence's case to September 20, 2005. On September 20, 2005, the case was trailed to September 28, 2005, and sent to department 100 for trial. On the morning of September 28, 2005, Lawrence's counsel informed the court (Hon. David S. Wesley) he had filed a motion to continue trial for two weeks because he was currently engaged in another trial but, notwithstanding the court's willingness to grant the continuance, as a result of the proposed delay Lawrence wanted to represent himself. The court required Lawrence to complete an advisement and waiver of right to counsel form (commonly referred to as a Faretta
waiver) to ensure Lawrence understood the dangers and consequences of representing himself. The court also told Lawrence, "I will advise you against representing yourself. You are not a trained lawyer. *Page 691 You will be up against a very fine lawyer, but if that is your choice, you have a right to represent yourself. I will give you no special privileges. I want you to understand that."[2]
 Lawrence initialed the Faretta waiver in most of the required locations, including the box acknowledging he understood his constitutional right to an attorney and the dangers and disadvantages of self-representation. Although Lawrence also initialed the box corresponding to the statement, "I understand that I am charged with the following crime(s)," he did not list the crimes on the blank spaces provided nor did he initial the boxes corresponding to questions 5, 6 and 7 indicating he understood certain aspects of the crimes charged.[3]
The trial court asked Lawrence if he knew the crimes with which he was charged. Lawrence failed to respond, and the court informed him of the charges and asked, "Now, do you understand what you are charged with?" Lawrence replied he did, and the court filled in the section specifying the charges and returned the Faretta waiver form to Lawrence to initial boxes 5, 6 and 7 if he understood the questions. The court advised Lawrence if he had any questions he could ask his counsel before the court relieved him. After Lawrence initialed the boxes and the court again ascertained he wanted to represent himself[4] and was ready to proceed (as were his two codefendants), [5] the case was transferred to a new department for trial.[6] *Page 692 
 3. Lawrence's Efforts to Withdraw His Faretta Waiver and ObtainCounsel
 Jury selection commenced that afternoon. After the conclusion of the trial day, Joseph Walsh, counsel for Broomfield, informed the court, "Once the trial started, Mr. Lawrence was unfamiliar with the proceedings, so out of courtesy I was answering his questions essentially." "And just informal conversations with Mr. Lawrence he has a request now that he wishes the court — I think he wants to withdraw his pro per status." Lawrence explained, "The only reason is cross-examination. People are saying something and I am not for sure able to, you know." The court (Hon. Mark V. Mooney) denied Lawrence's request, stating: "Mr. Lawrence, I think you were advised of all of these problems. I see here that you filled out a pro per waiver form setting forth all of these things about your understanding and what you would be up against and you made a decision." The court then admonished Lawrence, "You can't be bothering Mr. Walsh during the trial" and denied Walsh's request Lawrence be provided with advisory counsel.
 The following day, Thursday, September 29, 2005, voir dire concluded; the jury was sworn; and the proceedings were adjourned until Monday, October 3, 2005, at 10:30 a.m.
 At the outset of the proceedings on October 3, 2005, before the jurors were brought into the courtroom, Lawrence again attempted to withdraw hisFaretta waiver and requested the appointment of counsel, stating, "I talked to my wife and I need a state appointed lawyer or public defender. I am going to have to request a public defender and I am retiring my pro per on the record."[7] The court declined to address Lawrence's request until the next break in the proceedings. Before that occurred, opening statements were made and the prosecution's first witness began testifying. After excusing the jury for lunch, the court denied Lawrence's request, stating, "The court has considered your request and I am going to deny your request at this time. This was something you were warned about when you got yourself into this, about you would be at a disadvantage choosing to represent yourself in this matter. I also consider the fact that, you know, the jury has been selected in this matter, that you also have a codefendant. And it would be disruptive to *Page 693 her case as well to have someone come in. Your previous attorney, Mr. Cohen [sic], as I understand, is still engaged in trial and not available, so for all of those reasons I am going to deny your request. And I also note when you filled out this form you were specifically advised and you initialed here on paragraph H if you ask to give up your pro per status the court may deny the request and have you proceed to trial without an attorney and that is where we are now, sir."
 4. The Jury's Verdict and Sentencing
 The jury found Lawrence guilty on both counts.[8] The trial court found true the special allegations Lawrence had suffered two prior convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a), but struck one conviction due to its age and the significant sentence Lawrence would serve without regard to the enhancement for the older conviction. Lawrence was sentenced to an aggregate state prison term of seven years: the middle term of four years for selling, transporting or offering to sell a controlled substance, plus a consecutive three-year enhancement for the prior drug conviction. A concurrent middle-term sentence of four years was imposed for possession of cocaine base for sale.
 CONTENTIONS Lawrence contends he did not knowingly and voluntarily waive his constitutional right to counsel and invoke his right to self-representation and the trial court abused its discretion in refusing to permit him to withdraw his waiver of that right.[9]
 DISCUSSION 1. Lawrence's Waiver of His Right to Counsel and Invocation of His Right to Self-representation Was Knowing and Voluntary
 It is now a fundamental precept of our criminal justice system that every defendant, rich or poor, has the right to assistance of counsel and that no accused may be convicted and imprisoned unless he or she has been *Page 694 accorded that right. (See, e.g., Powell v. Alabama (1932) 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55]; Johnson v. Zerbst (1938) 304 U.S. 458, 462-463
[82 L.Ed. 1461, 58 S.Ct. 1019] [6th Amend, "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious"]; Gideon v. Wainwright (1963)372 U.S. 335, 344 [9 L.Ed.2d 799, 83 S.Ct. 792] ["in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him"].)
 Yet a criminal defendant also has the right under the Sixth andFourteenth Amendments to waive the right to counsel and to represent himself or herself. (Faretta, supra, 422 U.S. at p. 819 ["[t]he Sixth
Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense"].) "`A defendant in a criminal case possesses two constitutional rights with respect to representation that are mutually exclusive. A defendant has the right to be represented by counsel at all critical stages of a criminal prosecution. [Citations.] At the same time, . . . because the Sixth Amendment grants to the accused personally the right to present a defense, a defendant possesses the right to represent himself or herself.'" (People v. Koontz (2002) 27 Cal.4th 1041, 1069 [119 Cal.Rptr.2d 859, 46 P.3d 335].)
 If the defendant is mentally competent and, within a reasonable time before trial, makes an unequivocal request knowingly and voluntarily after having been advised by the court of the dangers of self-representation, the request must be granted. (Faretta, supra,422 U.S. at p. 835; People v. Valdez (2004) 32 Cal.4th 73, 97-98 [8 Cal.Rptr.3d 271, 82 P.3d 296]; People v. Welch (1999) 20 Cal.4th 701,729 [85 Cal.Rptr.2d 203, 976 P.2d 754].) "`No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation.' [Citation.] Rather, `the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.'" (People v. Blair (2005)36 Cal.4th 686, 708 [31 Cal.Rptr.3d 485, 115 P.3d 1145].) We examine de novo the whole record to determine the validity of the defendant's waiver of the right to counsel. (People v. Koontz, supra, 27 Cal.4th at p. 1069.)
 The record reflects Lawrence knowingly and voluntarily waived his right to counsel and invoked his right to self-representation. The trial court adequately advised Lawrence of the dangers of self-representation and informed *Page 695 him the court would not afford him special treatment. Additionally, theFaretta waiver form Lawrence completed notified him of his rights and warned him about the disadvantages of self-representation with specificity. The fact Lawrence did not list the crimes with which he was charged or initial boxes 5, 6 and 7 does not compel a different conclusion. After the court informed Lawrence what he was charged with, Lawrence stated he understood. The court returned the form to Lawrence to initial boxes 5, 6 and 7 only if he understood what they meant and advised him to consult with his attorney if he had any questions. Lawrence initialed the boxes, and there is nothing in the record to indicate he did so unwillingly or without an understanding of their meaning. In fact, the court again questioned Lawrence to confirm he still wanted to proceed with self-representation. Accordingly, Lawrence has not carried his burden "to demonstrate he did not knowingly and intelligently waive his right to counsel." (People v. McArthur (1992)11 Cal.App.4th 619, 627 [14 Cal.Rptr.2d 203].)
 2. The Trial Court Abused Its Discretion When It Denied Lawrence's Request to Withdraw His Faretta Waiver and Reassert His Sixth Amendment Right to Counsel
 A defendant may knowingly and voluntarily waive his or her right to counsel, invoke the parallel, but mutually exclusive right to self-representation, and thereafter realize the folly of that decision. There is nothing like a short stint of self-representation to dampen the hubris of a defendant who may not truly appreciate the dangers and disadvantages of self-representation when advised of them as part of aFaretta waiver. Nevertheless, a competent defendant who chooses to waive his or her right to counsel and pursue self-representation after being fully advised of the consequences must not be permitted to obstruct the fair and orderly administration of justice by later demanding counsel when it appears advantageous to do so. (See, e.g., Menefield v. Borg (9th Cir. 1989) 881 F.2d 696, 700 ["[t]here are times when the criminal justice system would be poorly served by allowing the defendant to reverse his course at the last minute and insist upon representation by counsel"].) Although the right to counsel at a critical stage of a criminal trial on charges punishable by imprisonment is absolute (Alabamav. Shelton (2002) 535 U.S. 654 [152 L.Ed.2d 888, 122 S.Ct. 1764]; Gideonv. Wainwright, supra, 372 U.S. at pp. 344-345), once that right has been knowingly and voluntarily waived, the defendant does not have an absolute right to withdraw his or her waiver and reassert the right to counsel. (People v. Boulware (1993) 20 Cal.App.4th 1753, 1756 [25 Cal.Rptr.2d 381]; see Menefield, at p. 700 ["the right to counsel — once waived — is no longer absolute . . ."].) In this circumstance the trial court is necessarily vested with the discretion "to determine whether such defendant may give up his right of self-representation and have counsel appointed for him." (People v. Elliott (1977)70 Cal.App.3d 984, 993 [139 Cal.Rptr. 205] (Elliott); see People v. *Page 696 Gallego (1990) 52 Cal.3d 115, 164 [276 Cal.Rptr. 679, 802 P.2d 169] ["`it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial'"].)
 In Elliott, supra, 70 Cal.App.3d at page 984, the court considered the defendant's contention the trial court had erred in denying his request to withdraw his waiver of counsel after jury selection (id. at p. 991), and described the question as whether the defendant has "any right, after a trial has started, to relinquish his constitutional right of self-representation and assert his constitutional right to be represented by counsel?" (Id. at p. 992.) Answering that question, theElliott court stated, "It would seem clear that the pre-Faretta
principle, applied in California, that once defendant has started to represent himself, he has no absolute right to change his mind and obtain representation by counsel [citation], is no longer tenable." (Ibid.) The court then articulated relevant factors that should be "considered by the trial court in order for it to exercise a meaningful discretion in ruling on defendant's request to change from self-representation to counsel-representation," including "(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (Id. at pp. 993-994.) These factors were derived from People v. Windham (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8,560 P.2d 1187] in which the California Supreme Court set forth factors the trial court should consider when confronted with a midtrial request by a defendant to waive the right to counsel and invoke the right to self-representation.[10] Subsequent to Elliott, the Supreme Court approved use of the Windham factors when a self-represented defendant attempts midtrial to withdraw a Faretta waiver and obtain appointed counsel, but added the trial court must also "consider the totality of the circumstances in exercising its discretion." (People v. Lawley (2002)27 Cal.4th 102, 149 [115 Cal.Rptr.2d 614, 38 P.3d 461]; see People v.Gallego, supra, 52 Cal.3d at p. 164.) "`As in Windham, a trial judge must establish a record based upon the relevant factors involved and then exercise his discretion and rule on defendant's request for a change from self-representation to counsel-representation.'" (Gallego, at p. 164, quoting Elliott, supra, 70 Cal.App.3d at p. 994.) *Page 697 
 The trial court denied Lawrence's request to withdraw his Faretta
waiver and to reassert his right to counsel in this case because the jury had already been selected and sworn, delay would be disruptive to Lawrence's codefendant and his prior attorney was still engaged in trial and unavailable. Although these reasons, particularly the inconvenience to jurors who had already undergone two days of voir dire and then returned on a third day to begin the trial, are not trivial, they are insufficient to justify denial of Lawrence's request for appointment of counsel. Most importantly, there is no indication in this record Lawrence was attempting to manipulate the right to counsel for any improper purpose. Lawrence's stated reason for requesting counsel was legitimate: He realized immediately after the proceedings commenced he was incapable of understanding the proceedings and conducting a defense.[11] Jury selection had just begun when Lawrence first reasserted his right to counsel. The second time Lawrence attempted to do so, the jury had been impaneled, but opening statements had not been given nor had any witness testified. It was only the trial court's decision not to immediately rule on Lawrence's second request that permitted the trial to advance through opening statements to the taking of testimony. Thus, the status of the case at bar was strikingly similar to that confronted by the court inElliott in which the jury had been selected, but opening statements not yet made, when the defendant requested to withdraw his Faretta waiver and have counsel appointed, asserting he now realized he "could not successfully compete with the prosecutor." (Elliott, supra,70 Cal.App.3d at p. 994.) The deputy public defender who had previously represented the defendant advised the court he was unable to begin trial of the case that day because of other commitments and stated he wanted a mistrial declared. (Ibid.) The Court of Appeal noted there was no indication the trial would be an unduly lengthy one and, when the deputy public defender had initially said he would want a 10-day continuance, no *Page 698 objection was made by the prosecutor, either in terms of problems with the production of witnesses or with respect to any other matter that might prejudice the People's case. (Id. at p. 995.)[12] Yet from the record the Court of Appeal concluded the trial court would have considered granting the defendant's request only if the deputy public defender was prepared to proceed at that time and with the jury then in the box. (Id. at p. 996.) In light of the defendant's valid reason for requesting reappointment of counsel and the absence of any showing of disruption in the calendar of the court, denial of his request was an abuse of discretion. (Id. at pp. 997-998; compare People v. Hill (1983)148 Cal.App.3d 744, 760 [196 Cal.Rptr. 382] [failure to reinstate counsel immediately before jury selection was abuse of discretion] People v. Cruz (1978) 83 Cal.App.3d 308, 319-320 [147 Cal.Rptr. 740] [failure to reinstate counsel on date set for trial was abuse of discretion] with People v. Lawley, supra, 27 Cal.4th at pp. 150-151
[defendant's two-week delay between jury's guilt phase verdict and date set for commencement of penalty phase to request appointment of counsel at penalty phase "clearly" supported trial court's denial of request] People v. Smith (1980) 112 Cal.App.3d 37, 49-50 [169 Cal.Rptr. 108] [that motion to change to self-representation was made on second day of trial after a crucial witness had testified was one of the factors justifying trial court's denial of motion].)
 Although Lawrence substituted privately retained counsel for his court-appointed counsel during pretrial proceedings, this single incident falls far short of demonstrating the type of history of changing counsel or asserting and then revoking the right to self-representation that would justify denying a properly asserted request for counsel. (See, e.g., People v. Williams (1990) 220 Cal.App.3d 1165, 1170 [269 Cal.Rptr. 705] [describing defendant who "juggl[ed] his Faretta
rights with his right to counsel interspersed with Marsden motions" as "playing `the Faretta game'"]; People v. Trujillo (1984)154 Cal.App.3d 1077, 1087 [202 Cal.Rptr. 832] [request for appointment of counsel by self-represented defendant properly denied when request was part of defendant's "deliberate attempt to manipulate the court system"].) Similarly, although the jurors selected to hear the case certainly would have been inconvenienced if Lawrence's request for counsel had been granted and a continuance or mistrial ordered to permit new counsel to prepare his defense, the record does not support the conclusion any significant disruption or untoward delay in the proceedings would have occurred had counsel been appointed. (See Peoplev. Cruz, supra, 83 Cal.App.3d at p. 321 ["no showing was made by the prosecution that the requested continuances would cause a *Page 699 disruption in the calendar of the courts, that it would be detrimental to the prosecution of the cases, or that it would be contrary to the interests of justice"].) Indeed, just hours before the first request Judge Wesley had been willing to grant a two-week continuance to permit Lawrence's counsel to complete his other trial or to provide Lawrence with sufficient time to prepare for trial. Neither Lawrence's codefendant nor the People objected that such a continuance would be disruptive or prejudicial. (See People v. Hill, supra, 148 Cal.App.3d at p. 761
[failure to show detrimental or disruptive delay "especially true in light of both the court's and the prosecutor's attitudes toward earlier delays"].) Finally, it was abundantly clear Lawrence could not effectively represent himself.[13] He had initially demonstrated this incapacity at the outset of trial when the court attempted to determine whether he would be willing to enter a plea agreement with a five-year prison term; in response Lawrence asked, "This is a fair court, right, so if you can do five years, can I get — if I beat it I get five million for wasting my time?"[14] Balancing the Elliott factors and in light of the totality of the circumstances, particularly the lack of any evidence of bad faith on Lawrence's part, it was an abuse of discretion to refuse Lawrence's request to withdraw his Faretta waiver and reassert his constitutional right to have counsel appointed.
 3. The Trial Court's Denial of Lawrence's Request Is Structural Error Requiring Automatic Reversal
 a. The error implicates the Sixth and Fourteenth Amendment right to counsel
 It would seem self-evident that the denial of a defendant's Sixth andFourteenth Amendment right to counsel, whether at the outset of the criminal proceedings or at a later stage after a defendant who had previously invoked the right to self-representation validly withdraws his or her waiver of counsel, is federal constitutional error. (See generallyUnited States v. Cronic (1984) 466 U.S. 648, 659 [80 L.Ed.2d 657,104 S.Ct. 2039] ["presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial"].) Yet most California Courts of Appeal that have found the trial court abused its discretion in denying a defendant's request to reassert his or her right to counsel have analyzed the error under the harmless error standard articulated *Page 700 in People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243] for state law errors.[15] (E.g., People v. Ngaue (1991) 229 Cal.App.3d 1115,1126 [280 Cal.Rptr. 757]; People v. Sampson (1987)191 Cal.App.3d 1409, 1418 [237 Cal.Rptr. 100]; Elliott, supra,70 Cal.App.3d at p. 998; see People v. Hill, supra,148 Cal.App.3d at p. 762 [standing alone the denial of appellant's request for reinstatement of counsel was state law error; the error, however, aggravated previous errors of federal constitutional magnitude].) The only explanation for application of the Watson standard to an error that appears to implicate the Sixth and Fourteenth Amendment right to counsel is articulated in Elliott, at page 998: "In the situation presented in the instant case, where defendant has exercised his constitutional right of self-representation but subsequently decides that he wishes to be represented by counsel, we believe that the issue of whether the error of the trial judge in refusing defendant's request to change his position from one of self-representation to that of counsel-representation is prejudicial error, should be governed by theWatson-Duran standard rather than by the Chapman standard. Since defendant has exercised his constitutional right of self-representation, an abuse-of-discretion error in not permitting defendant to change his mind does not appear to us to be of constitutional dimension."[16]
 The Elliott court's explanation, although understandable, is flawed. As discussed, once a valid Faretta waiver has been made, the defendant no longer has an absolute right to counsel. The trial court has discretion to deny a request to reassert that right to protect against bad faith manipulation of the criminal justice system and to avoid any serious disruption of the trial process. Nonetheless, once it has been determined the trial court abused its discretion — that is, erroneously denied the defendant's reassertion of his or her federal constitutional right to counsel — the error necessarily involves more than state procedure or state law. "Whether a conviction for crime *Page 701 should stand when a State has failed to accord federal constitutionally guaranteed rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied." (Chapman, supra,386 U.S. at p. 21; see Robinson v. Ignacio (9th Cir. 2004) 360 F.3d 1044,1059 ["[f]ive federal circuits have . . . interpreted the Supreme Court'sSixth Amendment precedent to mean that the right to counsel is so integral to the fair administration of our justice system that a defendant who has waived his right to counsel may nonetheless re-assert that right for the purposes of a sentencing proceeding and cannot be denied on the grounds that the defendant has previously waived that right"]; see also Menefield v. Borg, supra, 881 F.2d at p. 701,[fn. 7 [failure to appoint counsel for new trial motion, a critical stage of the proceedings, after defendant who represented himself at trial requested assistance was automatically reversible].)
 The concept that a federal constitutional right may be validly reasserted after an initial waiver is not unique to Sixth
Amendment-Faretta jurisprudence. For example, a defendant may waive his right to remain silent, to the presence of an attorney and, if indigent, to appointed counsel and thereafter reassert these rights. (Miranda v.Arizona (1966) 384 U.S. 436, 444-445 [16 L.Ed.2d 694, 86 S.Ct. 1602] ["The defendant may waive effectuation of [Miranda] rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning"];People v. Boyer (1989) 48 Cal.3d 247, 271 [256 Cal.Rptr. 96, 768 P.2d 610] [suspect who initially waives Miranda rights and responds to interrogation, may reinvoke them at any time], disapproved on other grounds in People v. Stansbury (1995) 9 Cal.4th 824, 830,[fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588]; United States v. Branson (9th Cir. 1985) 756 F.2d 752, 754 [defendant "succeeded in indicating to the arresting officers he wished to remain silent, and, therefore, totally revoked his waiver"]; United States v. Lorenzo (9th Cir. 1978)570 F.2d 294, 297 ["Clearly, the waiver of Miranda rights by a person being interrogated is not irrevocable. Miranda and its progeny allow an interrogee effectively to withdraw his waiver and fully assert his Fifth
Amendment rights in the midst of the interrogation process"].) Any error by a trial court in admitting into evidence statements made after a defendant has withdrawn the waiver and reasserted these rights is plainly of constitutional magnitude, subject to Chapman harmless error analysis. (Boyer, at pp. 279-280,[fn. 23; Branson, at p. 754; cf. Arizona v.Fulminante (1991) 499 U.S. 279, 310-312 [113 L.Ed.2d 302, 111 S.Ct. 1246] [admission of involuntary confession subject to Chapman harmless error analysis].) Although there are obviously significant differences between honoring a defendant's reassertion of his or her Miranda rights and recognizing a request for appointment of counsel following a *Page 702 Faretta waiver, in each case the right invoked remains constitutional in nature. (Cf. People v. Lawley, supra, 27 Cal.4th at p. 151 [denial of self-represented defendant's request for counsel at penalty phase of capital case not abuse of discretion; "record fails to establish a miscarriage of justice or violation of defendant's rights under the Fifth,Sixth, Eighth and Fourteenth Amendments to the United States Constitution"]; People v. Sullivan (2007) 151 Cal.App.4th 524, 556 [59 Cal.Rptr.3d 876] [no abuse of discretion in failure to restore counsel to self-represented defendant for trial on truth of prior convictions in absence of renewal of motion to appoint counsel; "the record fails to establish a miscarriage of justice or violation of defendant's constitutional right to appointed counsel"].)
 b. The error is structural and thus requires automatic reversal
 Most constitutional errors can be harmless. (Arizona v. Fulminante,supra, 499 U.S. at p. 306; see Neder v. United States (1999) 527 U.S. 1,8 [144 L.Ed.2d 35, 119 S.Ct. 1827] ["`[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis'"].) Under Chapman, supra, 386 U.S. at page 24, federal constitutional error requires proof of harmlessness beyond a reasonable doubt.
 Structural errors — those requiring automatic reversal — are those that "defy analysis by `harmless-error' standards" because they "affect[] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." (Arizona v. Fulminante, supra,499 U.S. at pp. 309-310.) These errors "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. Sixth Amendment violations that pervade the entire proceeding fall within this category." (Satterwhite v. Texas
(1988) 486 U.S. 249, 256 [100 L.Ed.2d 284, 108 S.Ct. 1792].)[17] There is no question the "total deprivation of the right to counsel at trial" is structural error. (Fulminante, at p. 309; see Chapman, supra,386 U.S. at p. 23 [fn. 8; People v. Stewart (2004) 33 Cal.4th 425, 462
[15 Cal.Rptr.3d 656, 93 P.3d 271].) "The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant. . . ." (Fulminante, at pp. 309-310.) "Since the scope of a violation such as a deprivation of the right to conflict-free representation cannot be discerned from the record, any inquiry into its effect on the outcome of the case would be purely speculative." (Satterwhite, at p. 256.) *Page 703 
 To be sure, there may be cases in which the evidence of guilt is so overwhelming the effect of erroneously requiring a defendant to proceed to trial without counsel may not defy analysis by harmless error standards (that is, be determined not to have adversely affected the outcome of the trial). Nevertheless, the core of the Sixth Amendment right to counsel is not that it commands a trial be fair, but that "a particular guarantee of fairness be provided" — representation by counsel. (United States v. Gonzalez-Lopez, supra, 548 U.S. at p. ___ [126 S.Ct. at p. 2562].) If a deprivation of counsel was erroneous, that right has been violated. "No additional showing of prejudice is required to make the violation `complete.'" (Id. at p. ___ [126 S.Ct. at p. 2562].)
 In United States v. Gonzalez-Lopez, supra, 548 U.S. [126 S.Ct. 2557] the United States Supreme Court explained that, while a violation of the right to the effective assistance of counsel, derived from the Sixth
Amendment's purpose of ensuring a fair trial, generally requires a defendant to establish prejudice, the right to select counsel of one's choice — the right at issue in Gonzalez-Lopez — has been regarded as "the root meaning of the constitutional guarantee": "Deprivation of the right is `complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." (Id. pp. ___ _ ___ [126 S.Ct. at pp. 2562-2563]; see id. at p. ___ [126 S.Ct. at p. 2565
["the requirement of showing prejudice in ineffectiveness claims stems from the very definition of the right at issue; it is not a matter of showing that the violation was harmless, but of showing that a violation of the right to effective representation occurred. A choice-of-counsel violation occurs whenever the defendant's choice is wrongfully denied"].) The erroneous denial of the right to counsel by anyone, no less than the denial of the right to counsel of one's choice, violates the "root meaning" of the Sixth Amendment.
 The trial court's abuse of discretion in failing to permit Lawrence to withdraw his Faretta waiver and reassert his right to the assistance of counsel was an error with the same deleterious effect as the other deprivations of the right to counsel consistently found by the United States Supreme Court to be structural error. (Cf. Robinson v. Ignacio,supra, 360 F.3d at p. 1061 ["[b]ecause of the fundamental importance of the right to counsel," failure to appoint counsel for sentencing after defendant revoked waiver of right to counsel was automatically reversible]; Menefield v. Borg, supra, 881 F.2d at p. 701,[fn. 7.) *Page 704 
 DISPOSITION The judgment is reversed, and the cause remanded for a new trial.
 Woods, J., and Zelon, J., concurred.
[1] It was also specially alleged that Lawrence had been convicted of a total of seven prior felonies making him ineligible for probation absent unusual circumstances pursuant to Penal Code section 1203, subdivision (e)(4).
[2] The waiver form signed by Lawrence cautioned his right to seek reappointment of counsel might be limited, not abrogated: "I understand that depending on the stage of my case, if I ask to give up my pro per status and request counsel to handle my case, the Court may deny this request and I may have to proceed with trial without an attorney."
[3] The questions were, "5. Do you know the crime(s) with which you are charged (is) (are) (general) (specific) intent crimes(s)? [¶] 6. Do you know what facts have to be proved before you can be found guilty of the offense(s) charged? [¶] 7. Do you know what the legal defenses are to the crime(s) with which you are charged?"
[4] The following exchange took place between Lawrence and the court:
 "The court: Again you have had an opportunity to think about this, is it still your desire to represent yourself?
 "The defendant Lawrence: Yes, sir. I have no choice.
 "The court: And you are — you have a choice; you can wait for Mr. Coen.
 "The defendant Lawrence: I had a lawyer before, they ain't doing nothing.
 "The court: Is it still your desire to represent yourself?
 "The defendant Lawrence: Yes, sir."
[5] Codefendants were Patricia Broomfield and John Evans. Evans pleaded guilty to one count of possession of cocaine base (Health Saf. Code, § 11350, subd. (a)) immediately prior to jury selection. Broomfield was convicted following her joint trial with Lawrence, but is not a party to this appeal.
[6] The court had indicated it was willing to give Lawrence two weeks to prepare himself for trial because it would have granted his counsel's request for a continuance. Lawrence declined the offer.
[7] Although Lawrence was represented by privately retained counsel when he elected to proceed in propria persona and at a portion of the sentencing hearing, he had been represented by the alternative public defender's office until the pretrial conference and is represented by appointed counsel on appeal. The People do not contend Lawrence's temporary representation by retained counsel disqualified him for appointed counsel or bears in any way on the issues raised in his appeal except that it demonstrates Lawrence had more than one attorney in the proceedings, as later discussed. Consequently, for purposes of this appeal, we assume Lawrence would have met the financial requirements for appointment of counsel when he requested it.
[8] Because the issues relating to Lawrence's representation do not require evaluation of the evidence presented at trial, we omit any discussion of the evidence supporting the jury's verdict.
[9] Lawrence also contends the trial court committed reversible error when it refused to appoint advisory counsel, to continue the trial and order that Lawrence be given access to the law library and to delay the sentencing hearing until after taking evidence on Lawrence's prior convictions to permit his newly retained private counsel to be present. As discussed, we reverse the judgment of conviction without reaching any of these additional issues.
[10] The Supreme Court in People v. Windham, supra,19 Cal.3d at page 131, footnote 7, explained it was "expressing] no opinion as to the rules applicable when a defendant initially waives counsel, proceeds to trial pro se, and then seeks to withdraw his waiver in order that an attorney may be appointed to represent him."
[11] The People assert Lawrence stated only that he would have trouble with cross-examination, not that he did not understand the proceedings or could not effectively represent himself. When Lawrence made this statement on September 28, 2005, in connection with his first request to withdraw his Faretta waiver, Joseph Walsh, counsel for Broomfield, had just informed the court Lawrence was unfamiliar with the proceedings and had been asking him questions. Clearly, Walsh was qualified to assess Lawrence's capability to understand the proceedings; based on that assessment he had requested the trial court appoint advisory counsel for Lawrence. Moreover, Lawrence's suggestion he only needed assistance with cross-examination because "[p]eople are saying something and I am not for sure able to, you know," itself is revealing inasmuch as the trial was then only at the jury selection stage.
 The People's contention Lawrence's request for appointment of counsel was equivocal is similarly without merit. When the court finally considered Lawrence's request on October 3, 2005, Lawrence reiterated, "Yes, your Honor. I talked to my wife this weekend and she said I shouldn't be doing something. And it doesn't matter to me, but she figured I might get a public defender or state appointed attorney or someone. . . . I haven't been to the law library or nothing either." To the extent Lawrence was expressing some doubt by indicating "it doesn't matter to me" and that uncertainty was relevant to the trial court's consideration, which the record does not suggest, the trial court had a duty to inquire further.
[12] The People called eight witnesses in Lawrence and Broomfield's joint trial: four members of the Los Angeles Police Department, two criminalists employed by the City of Los Angeles and two undercover informants. As was true in Elliott, there is no indication in the record delaying the trial would have created any problem in the production of any of these witnesses for trial.
[13] On his Faretta waiver form Lawrence, who had work experience as a salesman and a plasterer, listed his legal education as "comen sence."
[14] Another exchange suggesting Lawrence's inability or unwillingness to take the proceedings seriously and effectively represent himself occurred after the jury was impaneled and dismissed for the day. When the court stated, "The record will reflect the jurors have exited the courtroom," Lawrence replied, "The record said I changed my car insurance to GEICO." Lawrence then explained in response to the court's inquiry, "I am just messing with you."
[15] In People v. Boulware, supra, 20 Cal.App.4th 1753, the court noted "[b]oth appellant and respondent agree that the effect of error in this situation [abuse of discretion in denying a request for reappointment of counsel] is tested under the standard of Chapman" and concluded any error in the denial of the defendant's late request for counsel at a preliminary hearing was harmless beyond a reasonable doubt. (Id. at p. 1757.) In People v. Carroll (1983) 140 Cal.App.3d 135, 144
[189 Cal.Rptr. 327] the court in dicta suggested the harmless error standard in Chapman, supra, 386 U.S. 18 would apply to the erroneous denial of a defendant's belated request to reassert the right to counsel.
[16] Although applying the state law harmless error standard of Peoplev. Watson, supra, 46 Cal.2d at page 836, to the trial court's abuse-of-discretion error in "not permitting defendant to change his mind" (Elliott, supra, 70 Cal.App.3d at p. 998), the Elliott court nonetheless recognized the defendant was "assert[ing] his constitutional right to be represented by counsel." (Id. at p. 992.) In contrast, inPeople v. Rivers (1993) 20 Cal.App.4th 1040 [25 Cal.Rptf.2d 602] the Court of Appeal applied the Watson standard to the erroneous denial of an untimely Faretta motion on the ground, "once trial has commenced, the right to self-representation is no longer based on the Constitution." (Id. at p. 1050, citing People v. Bloom (1989) 48 Cal.3d 1194, 1220 [259 Cal.Rptr. 669, 774 P.2d 698].)
[17] Harmless error analysis is permitted, for example, "where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial" (Satterwhite v. Texas, supra,486 U.S. at p. 257) or when a defendant is sentenced based upon an aggravating circumstance that has not been submitted to the jury. (Peoplev. Sandoval (2007) 41 Cal.4th 825, 838-839 [62 Cal.Rptr.3d 588,161 P.3d 1146].) *Page 705