**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesus CASTILLO–VALENCIA, and Jose Pulido–Gomez, Defendants–Appellants.**

No. 89–5712.

United States Court of Appeals,
Eleventh Circuit.

Nov. 20, 1990.

Leighton G. Morse, Law Office of Leighton G. Morse, P.A., Miami, Fla., for Jesus Castillo–Valencia.

Reemberto Diaz, Diaz & Batista, P.A., Hialeah, Fla., for Jose Pulido–Gomez.

Linda Collins Hertz and Anne R. Schultz, Asst. U.S. Attys., Miami, Fla., Terrence Thompson, Asst. U.S. Atty., Fort Lauderdale, Fla., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

FAY, Circuit Judge:

Defendant-appellants Jesus Castillo–Valencia and Jose Pulido–Gomez appeal their convictions in district court for conspiracy to possess marijuana with intent to distribute and for possession of marijuana with intent to distribute. Both appellants maintain that the district court erred in its refusal to grant a severance of their trials from the trial of eight other defendants charged in the same conspiracy. Because we find that the joint trial of all ten co-defendants did not subject the appellants to compelling prejudice, we AFFIRM the district court's denial of their motion for severance. In addition, appellant Pulido–Gomez also appeals the district court's application of the United States Sentencing Guidelines in determining his sentence. For the reasons that follow, we AFFIRM the decision of the district court not to grant appellant Pulido–Gomez a two point

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

reduction in his sentence level for acceptance of responsibility under section 3E1.1 of the Guidelines. Next, we AFFIRM the district court's two point increase in the sentencing level of Pulido–Gomez for his managerial role in the offense, under section 3B1.1 of the Sentencing Guidelines. Finally, we AFFIRM the three point increase in the sentencing level of Pulido–Gomez for obstruction of justice, under section 3C1.1 of the Sentencing Guidelines.

*Procedural History*

Appellants Castillo–Valencia and Pulido–Gomez were indicted along with eight others on two federal counts, charging them with conspiracy to possess marijuana with intent to distribute and with possession of marijuana with intent to distribute. Appellants' initial motion for a severance was denied by the district court without prejudice, and they were tried with eight co-defendants before a jury. Again following opening statements, at the close of the government's case, and at the close of all the evidence, appellants moved for severance, alleging the existence of antagonistic defenses. The district court denied each of these motions for severance. After a four day trial, the jury found appellants guilty on both counts. A mistrial was declared for the eight co-defendants after the jury failed to reach a verdict for each of them. Following the verdict, appellant Pulido–Gomez made a motion for a new trial, which the district court denied. Both appellants are currently incarcerated.

*Factual History*

The United States Coast Guard ship, "USS Petrel," on patrol off of the Florida Keys, encountered the ship "Carolina" approximately thirteen miles off of the coast of Cuba, after responding to a report of an unidentified vessel at that location. On board the Carolina, whose point of origin was Colombia, were appellants Pulido–Gomez and Castillo–Valencia, in addition to eight other defendants. Evidence at trial established that Castillo–Valencia was the captain of the Carolina, and that Pulido–Gomez served as the ship's first mate.

When the Petrel approached the Carolina, which lay dead in the water, the Carolina started its engines and began to move away. Despite repeated attempts by the Coast Guard to communicate with the Carolina in both Spanish and English and using both radio and bullhorn, the Carolina failed to respond and continued on its course. When the Petrel moved closer to the Carolina, using its blue law enforcement lights and its bullhorn to attract the ship's attention, the Carolina still did not respond. At some point in the encounter, Appellant Pulido–Gomez allegedly emerged from the Carolina's pilothouse and motioned for the Petrel to move away.

The Petrel eventually moved parallel to the Carolina, continuously requesting the Carolina to stop. On two occasions, the Carolina increased speed and turned to the right in an attempt to ram the Petrel. After each attempt, the commander of the Petrel ordered a warning burst from the Petrel's M–60 machine gun fired across the bow of the Carolina. After the second firing, Appellant Castillo–Valencia emerged from the pilothouse of the Carolina to indicate he was stopping. The Coast Guard then obtained consent to board the Carolina, and a subsequent search revealed 495 bales of marijuana stored in the ship's cargo hold. As a result the Carolina and its illicit cargo were seized, and all ten defendants were arrested.

At a joint trial of all ten defendants, three of the appellants' co-defendants testified, presenting a factual picture which served to set the captain and first mate apart from the remainder of the Carolina's crew with respect to their roles in the conspiracy. The three co-defendants testified that they had been hired only to assist in a salvage operation aboard the Carolina and had no knowledge of the marijuana on board until three days into their voyage. They alleged that the Carolina's machinist first discovered the marijuana when he opened a hatch to air out the engine room. The machinist then alerted the other crew members, who resolved that they should either return to Colombia or dump the marijuana overboard. When the crew approached the appellants to request that they return to Colombia or dump the mari-

juana, the appellants refused to do either. The appellants informed the crew that they could dump the marijuana overboard if they wished, but that they would then have to face the consequences upon their return to Colombia. While the appellants never personally threatened the crew members, the members of the crew who testified expressed a general fear of what might happen to them in light of the appellants' warnings. Afraid for their own lives and for the lives of their family members in Colombia, the crew testified that it was forced to allow the marijuana to remain on board the ship.

*Denial of the motion for severance*

 The general rule in this circuit is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases. *United States v. Alvarez,* 755 F.2d 830, 857 (11th Cir.1985), *cert. denied* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985) and 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 380 (1987) (citations omitted). A district court's refusal to grant a motion for severance will only be reviewed for an abuse of discretion. *United States v. Puig,* 810 F.2d 1085, 1088 (11th Cir.1987). Thus, appellate courts have indicated a reluctance to second guess a district court's decision to deny a severance motion. *United States v. Gonzalez,* 804 F.2d 691, 694 (11th Cir.1986).

 The district court must, in applying Federal Rule of Criminal Procedure 14,[1] balance the right of the defendants to a fair trial against the interests of judicial economy and efficiency. *United States v. Gonzalez,* 804 F.2d at 694; *United States v. Alvarez,* 755 F.2d at 857. In order to show that the district court abused its discretion in denying a severance, the defendant must show that without severance he suffered compelling prejudice and was therefore unable to receive a fair trial. *United States v. Puig,* 810 F.2d at 1088. Thus, in order to compel severance, the defenses of co-defendants must be more

than merely antagonistic. *United States v. Berkowitz,* 662 F.2d 1127, 1133 (5th Cir., Unit B 1981) (citations omitted).[2] The defenses of co-defendants must be antagonistic to the point of being mutually exclusive. *Id.* In other words, "if the jury, in order to believe the core of testimony offered on behalf of [a] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant," then the defenses of the co-defendants have reached a level of antagonism that compels severance. *Id.* at 1134.

This requirement that the defenses of co-defendants be so antagonistic as to be mutually exclusive has been recently set forth in a four-step analysis which we must follow in reviewing a district court's denial of a motion for severance. The analysis asks:

(1) Do the alleged conflicts with co-defendants' defenses go to the essence of the appellant's defense?

(2) Could the jury reasonably construct a sequence of events that accommodates the essence of both defendants' defenses?

(3) Did the conflict subject the appellant to compelling prejudice?

(4) Could the trial judge ameliorate the prejudice?

*Smith v. Kelso,* 863 F.2d 1564, 1568 (11th Cir.1989), *cert. denied,* —— U.S. ——, 109 S.Ct. 2079, 104 L.Ed.2d 644 (1989). Applying this analysis to the facts here, we find that the district court's denial of the appellants' motion for severance was proper.

This case presents a difficult set of facts which at first glance appears to require severance of the appellants' trial from the trial of their eight co-defendants. In advancing their own defenses of coercion, the three co-defendants who testified at trial essentially became the government's best witnesses against the appellants Castillo–

---

1. Rule 14 allows a court to order severance where a defendant would be prejudiced by the joinder of multiple defendants for trial.

2. Unit B decisions of the former Fifth Circuit rendered after September 30, 1981 are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

Valencia and Pulido–Gomez.[3] When the facts here are analyzed under the requirement that the appellants suffer prejudice from the denial of severance, however, it becomes clear that no prejudice resulted. For this reason, severance was properly denied.

■ At the outset we recognize that any time a defendant pleads not guilty and proceeds to trial, the defense of a co-defendant which implicates that defendant will be antagonistic to the plea of not guilty. This is not enough, however, to mandate severance. The requirement is a more stringent one, namely, that a co-defendant suffer actual prejudice from denial of his motion to sever. *See Smith v. Kelso*, 863 F.2d at 1568.

■ Applying the four part analysis to the facts of this case, we simply cannot find any actual prejudice to Castillo–Valencia or Pulido–Gomez resulting from the denial of their motion for severance. Under the first part of the analysis, the alleged conflicts with the co-defendants' defenses do not go to the essence of the appellants' defenses. Neither appellant offered any evidence that they lacked the knowledge or intent that was required in order for the jury to find them guilty.[4] In fact, neither appellant offered evidence that would constitute *any* defense to the charges against them.[5] For this reason, under the second part of the analysis, it becomes unnecessary to inquire whether the jury could reasonably construct a sequence of events that accommodates the essence of both defendants' defenses.

In assessing whether the conflict subjected the appellant to compelling prejudice under the third part of the analysis, we reiterate our finding that no actual prejudice resulted. Where appellants presented no evidence amounting to a defense to the charges against them, prejudice cannot be found simply by virtue of the fact that the defenses of their co-defendants further implicated the appellants' guilt.[6] And finally, where no actual prejudice resulted, it becomes irrelevant whether, under the fourth part of the analysis, the trial judge could ameliorate the prejudice.

Therefore, because we find that no actual prejudice resulted to appellants Castillo–Valencia or Pulido–Gomez as a result of the testimony of three co-defendants at

---

3. The testimony of the three co-defendants portrayed the captain and first mate as having full knowledge of the presence of the 495 bales of marijuana on board the Carolina. In addition, the jury could conclude from the testimony of the crewmen that the appellants were more centrally involved in the conspiracy to distribute the marijuana and were more directly involved with the unknown parties in Colombia who would object to the dumping of the bales. The crewmen, on the other hand, were portrayed as victims of deception and coercion. One co-defendant testified:

Q: And these threats that were issued, were they against you or were they against you and the other crewmen aboard?

A: Yes, that is that it could happen to us, that that was going to happen to all of us.

Q: By all of us, you mean your seven crew mates?

A: Yeah, they told us if we dumped this, when we would get to Colombia they will kill us, they will kill our families.

Q: Is that the reason that you did not dispose of the marijuana?

A: Yes.

(T. 135).

4. While counsel for Pulido–Gomez attempted to elicit testimony on cross examination of one of the crewmen that Pulido–Gomez did not exercise any degree of control aboard the Carolina, the testimony of the crewman in fact suggested the opposite. The crewman stated that Pulido–Gomez operated the radio, and that Castillo–Valencia and Pulido–Gomez took turns sleeping.

5. Again, while the defenses of appellants' co-defendants, which implicate the guilt of the appellants, are in conflict with the appellants' pleas of not guilty, we do not believe that this is the type of conflict the first part of this analysis envisions. Any time a defendant pleads not guilty and goes to trial, a defense of a co-defendant which implicates that defendant's guilt will be in conflict with the not guilty plea. The first part of the analysis would be meaningless if this were all that was required for a finding of essential conflict. We believe the first part of the analysis requires a comparison of the *actual* defenses of co-defendants to determine whether a conflict exists which goes to the essence of those defenses.

6. This is not a case of questionable guilt. The defendants were operating a vessel loaded with marijuana. The bare uncontradicted facts are overwhelming.

their joint trial, we AFFIRM the district court's denial of the appellants' motion for severance.

### Application of Sentencing Guidelines

In reviewing any application of the United States Sentencing Guidelines by a district court, the court of appeals must "give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e)(4).

### Section 3E1.1

Appellant Pulido–Gomez first contends that the district court erred in refusing to grant him a two point reduction for acceptance of responsibility,[7] under section 3E1.1 of the Sentencing Guidelines.[8] Pulido–Gomez maintains that because he voluntarily cooperated with the government by telling them what he knew concerning where and when the Carolina was supposed to rendezvous to offload the 495 bales of marijuana, he should be entitled to the reduction for acceptance of responsibility under section 3E1.1. In denying Pulido–Gomez the two point reduction the district court recognized his cooperation with the government. It found, however, that his decision to pro-

ceed to trial was contrary evidence of his failure to accept personal responsibility for his offense.

■ The Sentencing Guidelines make it clear that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." *See* U.S.S.G. § 3E1.1, comment. (n.5); *United States v. Pritchett*, 908 F.2d 816, 824 (11th Cir.1990). Because demonstration of whether or not the defendant has personally accepted responsibility for his criminal conduct requires a consideration of both objective factors and subjective considerations of the defendant's demeanor and sincerity, the district court's determination will not be overturned unless it is without foundation. *United States v. Wallace*, 904 F.2d 603, 605 (11th Cir.1990) (citations omitted).

■ In determining whether a defendant has accepted responsibility under section 3E1.1, the district court may not refuse to find an acceptance of responsibility *per se* simply because the defendant has elected to go to trial. *See* U.S.S.G. § 3E1.1, comment. (n.2). The commentary to the Guidelines makes it clear that "[c]onviction by trial does not preclude a defendant from consideration under this section.

---

7. Pulido–Gomez mistakenly asserts that the district court granted him only one point for the acceptance of responsibility. This mistake is related to another mistaken assertion, namely, that the district court increased his offense level by three points for obstruction of justice. Pulido–Gomez contends that the district court elevated his offense level by three points for the obstruction of justice and two points for his supervisory role in the offense, for a total elevation of five points. He then asserts that the district court reduced his offense level by one point for the acceptance of responsibility, bringing the total elevation to only four points.

While Pulido–Gomez is correct in that the total elevation by the district court came to four points, he is mistaken in his interpretation of how the district court arrived at that four point increase. It is clear from the record that the district court raised Pulido–Gomez' offense level by two points for the obstruction of justice and by two points for his allegedly supervisory role in the offense. Because it found that it could not give a reduction of only one point for acceptance of responsibility, the district court de-

clined to give Pulido–Gomez any point reduction for acceptance of responsibility.

Because Pulido–Gomez appeals the district court's finding that he did not accept responsibility because he chose to go to trial, that issue is preserved on appeal despite his mistaken interpretation of the district court's order.

8. Section 3E1.1, entitled "Acceptance of Responsibility," provides:

 (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

 (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

 (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 (Nov. 1989).

A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial." *Id.* Thus, a defendant may plead not guilty to the charge, be convicted at trial, and still recognize and accept personal responsibility for his conduct for purposes of sentencing. *United States v. Rodriguez*, 905 F.2d 372, 374 (11th Cir.1990) (citing *United States v. Fleener*, 900 F.2d 914 (6th Cir.1990) (defendant who relied on entrapment defense at trial properly awarded reduction); *United States v. Big Crow*, 898 F.2d 1326 (8th Cir.1990) (defendant who relied on intoxication as defense to intent element of offense properly awarded reduction)).

 On the other hand, we find that a defendant's decision to go to trial may properly be considered along with other factors in determining whether there has been an acceptance of responsibility under 3E1.1. This is necessarily so in light of the commentary to section 3E1.1, which provides that "[a] guilty plea may show some evidence of the defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.3). A guilty plea may be found to be an indication of acceptance of responsibility. The law has long recognized such as the first step toward rehabilitation. Rewarding a defendant for such a decision does not equate with punishing one who does not follow such a course. No one should be punished for exercising his or her rights. However, the entry of a not guilty plea and insistence upon a trial are factors that may be considered in deciding whether or not a defendant has in fact accepted responsibility for wrongful conduct. Such facts may be properly considered as part of the total picture.[9]

–For the above reasons, we AFFIRM the decision of the district court not to grant appellant Pulido–Gomez a two point reduction in his sentence level for acceptance of responsibility, under section 3E1.1 of the Sentencing Guidelines.

*Section 3B1.1*

Appellant Pulido–Gomez next contends that the district court erred in increasing his offense level by two points, under section 3B1.1 of the United States Sentencing Guidelines,[10] for his managerial role in the offense. Pulido–Gomez, the Carolina's first mate, maintains that his involvement was no different from the involvement of the other crew members aboard the Carolina. In determining that Pulido–Gomez exercised a managerial role in the offense, the district court concluded that his act of motioning the Coast Guard vessel to move away during its pursuit of the Carolina made him a more culpable leader than the rest of the crew.[11]

 A district court's determination of a defendant's role in a crime is a finding of fact to which the clearly erroneous test has been applied. *United States v. Forbes*, 888 F.2d 752, 754 (11th Cir.1989). Thus, the factual conclusions of the district court will not be overturned unless they are clearly erroneous. *United States v. Carrillo*, 888 F.2d 117, 118 (11th Cir.1989) (citing *United States v. Wright*, 873 F.2d 437, 444 (1st Cir.1989); *United States v. Mejia–Orosco*, 867 F.2d 216 (5th Cir.1989)).

9. Further, the constitutionality of the district court's determination that a defendant has not accepted responsibility, for purposes of section 3E1.1, in light of his decision to go to trial, is without question. *See United States v. Henry*, 883 F.2d 1010 (11th Cir.1989). While section 3E1.1 may affect how criminal defendants choose to exercise their constitutional rights, its purpose is not to punish a defendant for the exercise of those rights. *Id.* at 1011. This circuit has been unwilling to equate the possibility of leniency with impermissible punishment. *Id.* Thus, where section 3E1.1 provides only for sentence reduction and not for enhancement of punishment, *Id.* at 1011 n. 6, it does not have the unconstitutional effect of punishing a defendant for exercising his constitutional right to go to trial.

10. Section 3B1.1, entitled "Aggravating Role," provides in pertinent part:

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1(c).

11. The district court judge took note of the fact that the other crewmen aboard the Carolina remained in the background during the pursuit by the Coast Guard vessel, Petrel.

The commentary to section 3B1.1 sets forth a number of factors for the district court to consider in determining whether a defendant exercised a managerial role in a particular offense. *See* U.S. S.G. § 3B1.1, comment. (n.3). The enumerated factors include the exercise of decisionmaking authority, the nature of participation in the commission of the offense, and the degree of control or authority exercised over others. *Id.* The finding of the district court that Pulido–Gomez was a more culpable leader than the rest of the crew was based upon the actions of Pulido–Gomez during the pursuit of the Carolina by the Coast Guard. Because the act of motioning the Coast Guard to move away from the Carolina, while the rest of the crew remained in the background, may be seen to evidence a greater degree of control over the criminal enterprise and the exercise of some degree of decisionmaking authority, the finding of the district court was not clearly erroneous. Therefore, we AFFIRM the district court's two point increase in the sentencing level of Pulido–Gomez for his managerial role in the offense, under section 3B1.1 of the Sentencing Guidelines.

*Section 3C1.1*

Pulido–Gomez finally contends that the district court erred in increasing his offense level three points, under section 3C1.1 of the Sentencing Guidelines,[12] for obstruction of justice.[13] Pulido–Gomez maintains that the district court's finding that he obstructed justice by virtue of his presence on a ship which twice attempted to ram a Coast Guard vessel, was clearly erroneous absent any evidence that Pulido–Gomez was the one responsible for such activity.

The district court found that Pulido–Gomez obstructed justice because he aided the captain in attempting to evade the Coast Guard vessel. We find that the district court was not clearly erroneous in this factual finding and therefore AFFIRM the three point increase in the sentencing level of Pulido–Gomez for obstruction of justice, under section 3C1.1 of the Sentencing Guidelines.

---

**12.** Section 3C1.1, entitled "Willfully Obstructing or Impeding Proceedings," provides:

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels. U.S.S.G. § 3C1.1.

**13.** The actual increase by the district court was only by two points. See *supra* note 5.