[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13365
Non-Argument Calendar
_____

D.C. Docket No. 4:11-cr-00278-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD LOUIS WILLIAMS,
a.k.a. Ace,
a.k.a. Ace Bouvier,
a.k.a. Taz,
a.k.a. Akashi Iman,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 19, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Richard Louis Williams appeals his 37-month sentence for mail fraud, in violation of 18 U.S.C. § 1341.  Defendant Williams's offense involved using stolen rewards points from loyalty programs, such as Delta Airlines SkyMiles, American Airlines AAdvantage Program and Hilton Hotel's HHonor Program, to purchase airline tickets, hotel rooms and merchandise.  On appeal, Defendant Williams argues that the district court erred in: (1) finding a total loss amount of $46,773.56, which supported a six-level increase in his offense level, pursuant to U.S.S.G. § 2B1.1(b)(1)(D); (2) applying a two-level increase for use of sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C); and (3) denying Williams a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).  After review, we affirm.

The district court did not clearly err when it found that Defendant Williams's offense resulted in a total loss of $46,733.56 and imposed § 2B1.1(b)(1)(D)'s enhancement of six levels when a loss is greater than $30,000 but less than $70,000.  See U.S.S.G. § 2B1.1(b)(1)(D).  At sentencing, Defendant Williams did not object to some of the fraudulent purchases (12 flights, 2 hotel stays and 16 merchandise deliveries) the Presentence Investigation Report ("PSI") attributed to him, which totaled $24,744 in losses.  Furthermore, while the district

2

court heard evidence of a larger conspiracy to fraudulently acquire and use frequent flyer and hotel loyalty points resulting in losses of over $400,000, the district court held Defendant Williams accountable only for those losses for which the government presented evidence showing links to Williams.  Specifically, the government's evidence tying loss amounts of $46,733.56 (listed in the PSI) to Defendant Williams included the following: (1) the majority of the airline tickets and hotel rooms redeemed with the fraudulently acquired points were in Williams's own name or a slight variation thereof, and government-issued identification would have been required to redeem the tickets and bookings; (2) witnesses told investigators that Williams redeemed some of the disputed airline tickets and merchandise; and (3) many of the disputed purchases were linked through common email addresses, IP addresses, phone numbers and mailing addresses to other purchases Williams admitted.

Given this evidence, the district court did not clearly err in finding that the government had proven by a preponderance of the evidence that at least $30,000 in losses were attributable to Defendant Williams.  See United States v. Renick, 273 F.3d 1009, 1025 (11th Cir. 2001) (providing that, upon challenge, the government must prove the loss amount with reliable and specific evidence).  That some of the government's evidence was circumstantial does not render the district court's loss estimation unreasonable or speculative.  See United States v. Dominguez, 109 F.3d

3

675, 676 (11th Cir. 1997) (stating that although the district court must not speculate as to the existence of a fact that would permit a more severe sentence, it may make a reasonable estimate of the loss involved); see also U.S.S.G. § 2B1.1, cmt. n.3(C). Accordingly, the district court did not err in applying the six-level enhancement under U.S.S.G. § 2B1.1(b)(1)(D).

Nor did the district court clearly err in finding that Defendant Williams's fraud involved sophisticated means and thus applying U.S.S.G. § 2B1.1(b)(10)(C)'s two-level enhancement. The PSI's undisputed facts established that; (1) the fraud scheme, which operated for at least a year prior to Williams's indictment, involved more than 46 victims and Williams's fraudulent access to 43 secured accounts; and (2) Williams used multiple shipping addresses in both Georgia and South Carolina to receive shipments of fraudulently obtained merchandise in an effort to conceal his criminal conduct. Although Williams contends that his individual acts were not sophisticated, the district court concluded that "the totality of the scheme" was sophisticated, considering both Williams's use of multiple aliases, credit cards, email accounts, IP addresses and shipping addresses, and the sophistication required to gain access to victims' accounts, which was sufficient to support the enhancement. See United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010) (concluding that "[t]here is no requirement that each of a defendant's individual actions be sophisticated[;]

4

[r]ather, it is sufficient if the totality of the scheme was sophisticated"); U.S.S.G. § 2B1.1, cmt. n.8(B) (defining sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense" and citing as examples the use of multiple jurisdictions or the hiding of transactions through the use of fictitious entities).

Finally, the district court did not clearly err when it denied Defendant Williams a two-level reduction for acceptance of responsibility. Even though Defendant Williams pled guilty, his plea did not entitle him to a reduction of his offense level as a matter of right, particularly when the evidence before the sentencing court showed that Williams's conduct was inconsistent with an acceptance of responsibility. See U.S.S.G. § 3E1.1, cmt. n.3. Specifically, undisputed facts in the PSI established that Williams made false statements to federal agents during the investigation (denying his involvement in the fraud scheme) and then made false statements to the probation officer conducting the presentence investigation (denying he was arrested and convicted of prior felony forgery and escape offenses). Further, evidence presented during the sentencing hearing indicated that Williams falsely denied responsibility for almost half of the offense conduct through his objections to the loss calculation. Even if we consider only Williams's conduct after he was indicted, as Williams argues, that conduct—making false statements to the probation officer and falsely denying a significant

5

portion of the underlying offense conduct—is a sufficient basis to deny the acceptance-of-responsibility reduction.  See United States v. Castillo-Valencia, 917 F.2d 494, 500 (11th Cir. 1990) (explaining that we will overturn a district court's acceptance-of-responsibility determination only if "it is without foundation").

For all these reasons, we affirm Defendant Williams's 37-month sentence.

**AFFIRMED.**