[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13157
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-00078-ODE-RGV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NEMIAS CINTORA-GONZALEZ,
a.k.a. Diego,
a.k.a. Cristobal Mata Aleman,
JORGE ARMANDO-REYES,
a.k.a. Jose Gusman,
a.k.a. Jose Roberto Gusman Vasquez,
a.k.a. Chapito,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(June 24, 2014)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Nemias Cintora-Gonzalez and Jorge Armando-Reyes challenge their convictions and total sentences for drug, firearm, and counterfeiting offenses. For the reasons that follow, we affirm.

I.

Cintora-Gonzalez and Armando-Reyes were charged, along with several others, with conspiracy to distribute at least 500 grams of methamphetamine and at least 5 kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1)(A) (Count 2); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1)(A) (Count 3); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(i) (Count 4); possession of a firearm by an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5), 924(a)(2) (Count 6); and possession of counterfeit federal reserve notes, in violation of 18 U.S.C. § 472 (Count 8). They were convicted of all the above counts, with the jury specifically finding that the amount of drugs in Count 1 was at least 500 grams of methamphetamine and at least 5 kilograms of cocaine.

At a joint sentencing, the district court found that Cintora-Gonzalez's base offense level for the drug offenses was 34 given the amount of drugs involved, that he served as the leader of the charged conspiracy, and that he maintained a premises for distributing drugs. With respect to the § 922(g) offense, the court

2

found that he possessed 17 firearms.  His corresponding guidelines range was 292 to 365 months' imprisonment for the drug offenses, the § 922(g) offense, and the counterfeiting offense.  Count 4, the § 924(c) offense, carried a consecutive statutory mandatory minimum sentence of 60 months' imprisonment.  The court sentenced him to a total sentence of 352 months, which resulted from a sentence at the low end of the guidelines range plus a mandatory 60 month term on Count 4.  The court sentenced Armando-Reyes to a 211-month total sentence based on a low-end guideline sentence of 151 months because Armando-Reyes was responsible for a lesser amount of drugs, he did not maintain the premises for drug distribution, and he did not qualify as a leader of the conspiracy, plus a mandatory 60 month term on Count 4.

The defendants now appeal.  Specifically, Cintora-Gonzalez challenges the admission of certain testimony as prejudicial and his sentence as improperly calculated for several reasons.  Armando-Reyes challenges the admission of voice identification evidence and the calculation of his sentence.[1]  We address each defendant's arguments in turn.

## II.

### A. Cintora-Gonzalez

---

[1] Armando-Reyes indicated in his brief that he was adopting Cintora-Gonzalez's brief.  But Armando-Reyes was not subject to the enhancement for maintaining a premises or leadership of the conspiracy, and the district court determined he was responsible for a lesser amount of drugs. Thus, it is unclear exactly what arguments he intended to adopt.

1.  Admission of testimony

Cintora-Gonzalez argues that the district court erred in admitting a law enforcement agent's testimony regarding a series of intercepted calls in which Cintora-Gonzalez allegedly made serious threats to an individual named "La Torta," who owed him a drug debt.   He maintains that the testimony was unduly prejudicial and, therefore, inadmissible under Fed. R. Evid. 403.

We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Brown*, 415 F.3d 1257, 1264-65 (11th Cir. 2005).  An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment.  *Id.* at 1266.

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence.  Fed. R. Evid. 401, 402.  A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Relevant evidence is often inherently prejudicial, so the rule "permits exclusion only when unfair prejudice substantially outweighs probative value."  *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008) (quotation omitted).   Thus, we have cautioned that Rule 403 "is an

4

extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011).

On review, we conclude that the district court did not abuse its discretion in admitting the agent's testimony. Cintora-Gonzalez's drug-debt-related threats to La Torta evidenced the existence of the charged drug conspiracy, which Cintora-Gonzalez admits, and the extent of the conspiracy, which he continues to dispute. In other words, the threats had a tendency to prove, albeit indirectly, the large drug quantities charged in the indictment. Moreover, the imminent nature of the threats led agents to end their investigation quickly, before the arrival of some of the drugs discussed in the intercepted calls. As such, the government had to rely on the calls to establish the scope of the conspiracy. The testimony concerning the threats against La Torta thus completed the story and explained why the investigation ended abruptly.

Although the evidence of his threats may have proved prejudicial to Cintora-Gonzalez's defense, that is often the case with relevant evidence. *See Merrill*, 513 F.3d at 1301. Cintora-Gonzalez has not shown that the risk of misleading the jury was so great that the court abused its discretion by admitting the testimony. *See id.*; Fed. R. Evid. 403.

2. Sentencing

5

We review the district court's interpretation of the Sentencing Guidelines *de novo* and accept its factual findings unless clearly erroneous. *United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005). We will not reverse a sentencing determination if it proved harmless. *United States v. Gallegos-Aguero*, 409 F.3d 1274, 1276 (11th Cir. 2005). An error is harmless if, "viewing the proceedings in their entirety, a court determines that the error did not affect the [sentence], or had but very slight effect." *United States v. Hornaday*, 392 F.3d 1306, 1315 (11th Cir. 2004) (quotations and citation omitted). When a defendant fails to state clearly the grounds for an objection, however, his objection is reviewed only for plain error. *United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003). Plain error exists when: (1) there is an error, (2) that is plain, (3) that seriously affects a defendant's substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Acevedo*, 285 F.3d 1010, 1012 (11th Cir. 2002).

### a. Quantity of drugs

Cintora-Gonzalez challenges the court's determination of the drug quantity for which he was responsible and its alleged failure to make particularized findings. For sentencing purposes, the government bears the burden of establishing drug quantity by a preponderance of the evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). The district court must ensure

6

that the government carries this burden by presenting reliable and specific evidence. *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995). Where there is no drug seizure, or the amount seized does not reflect the extent of the offense, the court should approximate the drug quantity. *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996). In estimating the drug quantity attributable to the defendant, the court's determination "may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, . . . [but it] cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998).

The Sentencing Guidelines create differing base offense levels for drug offenses depending on the quantity of drugs involved. *See* U.S.S.G. § 2D1.1(c). When different types of drugs are involved, the court converts each of the drugs to its marijuana equivalent and adds the quantities to obtain a single offense level for a defendant. *Id.* § 2D1.1, comment. (n.10(B)). Under the 2012 Drug Quantity Table applied in this case, a base offense level of 34 corresponded to offenses involving at least 3,000 kilograms, but less than 10,000 kilograms, of marijuana. *Id.* § 2D1.1(c)(3).

At sentencing, defense counsel discussed the amount of drugs listed in the presentence investigation report (PSI), conceding some amounts and challenging others. The government noted that the jury had specifically found that Cintora-

7

Gonzalez was responsible for at least 500 grams of methamphetamine and 5 kilograms of cocaine, which corresponded to a level 32 in the Drug Table. The court considered the amounts Cintora-Gonzalez conceded distributing, about 1,559 kilograms of marijuana equivalency, and the amounts discussed in various intercepted phone calls. Specifically, the court relied on: (i) a stipulated recorded phone call from October 29, 2011, in which Cintora-Gonzalez discussed the sale of 5 kilograms of cocaine (1,000 kilograms of marijuana equivalency); and (ii) evidence of an October 10, 2011 phone call, wherein Cintora-Gonzalez agreed to deliver a half pound of methamphetamine (453.6 kilograms of marijuana equivalency). Although the court agreed with the defense that certain amounts were not supported by the evidence, the court found that there was reliable evidence to bring the amount over 3,000 kilograms and an offense level of 34. U.S.S.G. § 2D1.1(c)(3). Because the district court relied on specific evidence of the attributable drug quantities involved in the offense conduct—including admissions by Cintora-Gonzalez—it did not clearly err in assigning him a base offense level of 34. *See Lawrence*, 47 F.3d at 1566.

Moreover, we see no plain error in the manner in which the district court determined the drug quantity.[2] The court meticulously reviewed, and made findings with respect to, each of the discrete and particularized drug quantity

_____

[2] Cintora-Gonzalez raises this argument for the first time on appeal.

8

allegations contained in the PSI. *See Acevedo*, 285 F.3d at 1012. For these reasons, we affirm the district court's determination of the drug quantity.

### b. Maintaining a premises

Next, Cintora-Gonzalez challenges the district court's finding that he used his apartment for drug manufacturing and distribution. Section 2D1.1(b)(12) of the Guidelines calls for a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," including storage of a controlled substance for the purposes of distribution. U.S.S.G. § 2D1.1(b)(12) & comment. (n.17). To determine whether the enhancement is applicable, the court should consider "whether the defendant held a possessory interest in [] the premises and [] the extent to which the defendant controlled access to, or activities at, the premises." *Id.* § 2D1.1, comment. (n.17).

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

*Id.*

Few circuits have addressed this guideline, and we have done so only in a single unpublished opinion. *United States v. Vega*, 500 F. App'x 889, 891 (11th Cir. 2012) (unpublished) (concluding that the district court did not plainly err in

9

applying the enhancement where the defendant sold cocaine from his home on multiple occasions).   We thus turn to the reasoning of our sister circuits.

The Eighth Circuit considered the application of § 2D1.1(b)(12) to a premises that served both as the defendants' home and a stash house.  *United States v. Miller*, 698 F.3d 699, 706-07 (8th Cir. 2012).  There, the court looked at numerous factors, such as quantities of drugs involved, storage of "tools of the trade," maintenance of business records, and customer interactions, to determine whether the principal use of the residence was drug distribution.  The court had little difficulty applying the enhancement to Mr. Miller, the primary drug trafficker involved.  But as to his wife, the court found the enhancement applicable as well, despite her more limited role in the distribution, because she was specifically involved in at least three transactions at the home, she used her son to deliver drugs to one of the buyers, and she collected payment for drugs on several occasions.  Moreover, the court determined that under 21 U.S.C. § 856 and § 2D1.1(b)(12), Congress intended to deter the use of primary residences as stash houses.  In light of all of these factors, the court found that the enhancement would apply to a defendant who used her primary residence to distribute drugs.  *Id.* at 705-07.

Relying on *Miller*, the Seventh Circuit considered and applied the enhancement to a defendant who sold drugs out of his home.  *See United States v. Flores-Olague*, 717 F.3d 526, 531-32 (7th Cir.), *cert. denied*, 134 S.Ct. 211

10

(2013).[3] The court explained that a defendant "maintained" a premises for drug distribution if "he owns or rents premises, or exercises control over them, and for a sustained period of time, uses those premises to manufacture, store, or sell drugs, or directs others to those premises to obtain drugs." *Id.* at 532 (citing *United States v. Acosta*, 534 F.3d 574, 591 (7th Cir. 2008)).   The court also considered the number of drug transactions that occurred on the premises.  Because the defendant in *Flores-Olague* had stored cocaine on the premises for several years, sold it to at least ten regular customers, and had firearms in the home, the court concluded that the enhancement applied.

The Sixth Circuit upheld the application of § 2D1.1(b)(12) where the defendant had both a possessory interest in the residence and controlled the access to the home.  *See United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013).  In reaching this conclusion, the Sixth Circuit explained that "[T]he more characteristics of a business that are present" in the home—such as "tools of the trade (e.g., laboratory equipment, scales, guns and ammunition to protect the inventory and profits)," "profits," including large quantities of cash, and "multiple employees or customers"—"the more likely it is that the property is being used 'for

---

3 The Seventh Circuit first addressed § 2D1.1(b)(12) in *United States v. Sanchez*, 710 F.3d 724 (7th Cir. 2013), *vacated by,* 134 S.Ct. 146 (2013).  Because *Sanchez* has been vacated, albeit on other grounds, we rely on the analysis in *Flores-Olague*.

the purpose of' [prohibited] drug activities." *Id.* at 447-48 (quoting *United States v. Verners*, 53 F.3d 291, 295-97 (10th Cir. 1995) (discussing 21 U.S.C. § 856)).

Relying on this persuasive authority, we conclude that the district court properly applied § 2D1.1(b)(12) to Cintora-Gonzalez's guidelines calculations. The evidence at trial showed that Cintora-Gonzalez used his apartment for the purpose of manufacturing or distributing drugs. Cintora-Gonzalez concedes his proprietary interest in the premises. And the evidence showed Cintora-Gonzalez controlled access to and activities at the apartment.

Cintora-Gonzalez's former girlfriend, Brenda Perez, testified that she leased the apartment on his behalf. Additionally, Perez observed drugs in the apartment "[e]very time" she visited; she observed Cintora-Gonzalez chop up and mix a block of cocaine in the kitchen; there were boxes of baggies in the apartment; and Cintora-Gonzalez "always" had a gun in the bedroom. Perez's observations were consistent with the drugs, multiple firearms, ammunition, plastic baggies, digital scale, acetone, and counterfeit currency recovered by law enforcement agents after they searched the apartment. The presence of these "tools of the trade" supports the district court's conclusion that Cintora-Gonzalez maintained this residence for the purpose of drug distribution. Additionally, the evidence showed that Cintora-Gonzalez directed others to weigh and distribute drugs when he was out. Although

12

we do not know the number of transactions that occurred at the apartment, under these facts, we conclude that the application of § 2D1.1(b)(12) was proper.

### c.  Number of firearms

Cintora-Gonzalez also challenges the district court's finding that his § 922(g) offense involved between 8 and 24 firearms because there was no evidence he knew of the guns in his codefendant's car.  He concedes there were five firearms involved, and thus a two-level increase would be appropriate.

Under § 2K2.1(b)(1), a four-level increase applies if an offense involved 8 to 24 firearms, and a two-level increase applies if an offense involved 3 to 7 firearms. U.S.S.G. § 2K2.1(b)(1)(A), (B).  "[O]nly those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed" are to be counted under § 2K2.1(b)(1).  *Id.* § 2K2.1, comment. (n.5).

In this instance, the district court did not clearly err in its application of the § 2K2.1(b)(1)(B) enhancement with respect to his firearm conviction.  Cintora-Gonzalez does not dispute that the title and the keys to the car in which the additional firearms were discovered were found in his apartment, or that the vehicle itself was located in the parking lot.  But even if the court erred in this respect, any such error was harmless because Cintora-Gonzalez's combined total guideline range was determined by the offense level corresponding to the drug-trafficking offenses, not his firearm conviction.  Thus, any reduction in the

guideline range applicable to the firearm offense would prove inconsequential. *See Hornaday*, 392 F.3d at 1315.

> d.  Acceptance of responsibility

Next, Cintora-Gonzalez challenges the district court's decision not to award any reduction for acceptance of responsibility under § 3E1.1. We review a denial of a reduction of sentence for an acceptance of responsibility for clear error. *United States v. Knight*, 562 F.3d 1314, 1322 (11th Cir. 2009). "Because demonstration of whether or not the defendant has personally accepted responsibility for his criminal conduct requires a consideration of both objective factors and subjective considerations of the defendant's demeanor and sincerity, the district court's determination will not be overturned unless it is without foundation." *United States v. Castillo-Valencia*, 917 F.2d 494, 500 (11th Cir. 1990).

Section 3E1.1 provides that the defendant's offense level should be decreased by two points if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G § 3E1.1(a). But the commentary to § 3E1.1 explains that the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* § 3E1.1, comment. (n.2). In determining whether a defendant has accepted

14

responsibility under § 3E1.1, the district court may not refuse to find an acceptance of responsibility *per se* simply because the defendant has elected to go to trial. *Castillo-Valencia*, 917 F.2d at 500. On the other hand, "the entry of a not guilty plea and insistence upon a trial are factors that may be considered in deciding whether or not a defendant has in fact accepted responsibility for wrongful conduct." *Id.* at 501. Ultimately, § 3E1.1 "is intended to reward those defendants who affirmatively acknowledge their crimes and express genuine remorse for the harm caused by their actions." *United States v. Carroll*, 6 F.3d 735, 740 (11th Cir. 1993).

Generally, a defendant who pleads guilty but contests the drug quantity is not entitled to a reduction under § 3E1.1, and Cintora-Gonzalez has pointed to no authority otherwise. *See, e.g.*, *United States v. Garrasteguy*, 559 F.3d 34, 39-40 (1st Cir. 2009) (concluding that the defendant was not entitled to a reduction under § 3E1.1 where the defendant went to trial to contest the amount of drugs for which he was responsible); *United States v. Acosta*, 534 F.3d 574, 580 (7th Cir. 2008) (denying an acceptance-of-responsibility reduction where defendant pleaded guilty but challenged certain factual assertions in PSI); *United States v. Annis*, 446 F.3d 852, 857-58 (8th Cir. 2006) (denying acceptance-of-responsibility reduction where defendant pleaded guilty but refused to admit to any drug quantity and challenged reliability of prior statement to authorities).

15

Therefore, we conclude that the district court did not clearly err in refusing to award Cintora-Gonzalez a reduction for acceptance of responsibility under § 3E1.1(a). Although his decision to proceed to trial did not preclude the adjustment, *see Castillo-Valencia*, 917 F.2d at 500, this is not one of the "rare situations" in which the reduction is still applicable, *see* § 3E1.1, comment. (n.2). Cintora-Gonzalez did not go to trial to challenge the constitutionality of the statute under which he was charged. Rather, he contested factual allegations of the offense conduct.

Moreover, the court did not rely solely on the fact that he went to trial in denying the reduction. The court also noted the lack of documentation related to the purported plea negotiations or a written statement in which he formally accepted responsibility for the offense conduct. Although Cintora-Gonzalez conceded his guilt, the record in this case appears to lack any indication that he was genuinely remorseful for his conduct. Accordingly, the court properly denied the reduction.

e. Reasonableness

In his last argument on appeal, Cintora-Gonzalez contests the substantive reasonableness of his 292-month sentence. We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

16

"The review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). The court must consider several factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need to protect the public from further crimes of the defendant, the applicable guideline range, and the need to avoid unwarranted sentencing disparities between similarly situated defendants. *See* 18 U.S.C. § 3553(a). Notably, the "weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (quotations omitted).

Although we do not automatically presume that a sentence within the guidelines range is reasonable, we ordinarily expect that to be the case. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). A sentence well below the statutory maximum sentence also signals reasonableness. *See Gonzalez*, 550 F.3d at 1324. Moreover, we have held that a defendant's sentence was reasonable in light of the command to avoid unwarranted sentencing disparities where, due to a defendant's leadership role, he received a sentence greater than the sentences of his codefendants. *See, e.g.*, *United States v. Thomas*, 446 F.3d 1348, 1350, 1357 (11th Cir. 2006) (holding that the defendant's 121-month sentence was reasonable even

17

though his codefendants' sentences ranged from 41 to 53 months' imprisonment because the defendant had coordinated the offense).  Ultimately, we will vacate a sentence only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotation omitted).  "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

Cintora-Gonzalez has not met his burden.  Cintora-Gonzalez's sentence on the drug offenses fell within the guideline range and well below the statutory maximum sentence of life imprisonment as to the conspiracy count, both of which signal reasonableness.  *See* 21 U.S.C. § 841(b)(1)(A); *Hunt*, 526 F.3d at 746; *Gonzalez*, 550 F.3d at 1324.  Moreover, his offense conduct included a leadership role and threats of personal injury in a heavily armed conspiracy involving large amounts of drugs.  The dangerousness of that conduct and the public's interest in safety support the court's sentencing determination.  And although Cintora-Gonzalez's co-conspirators received lighter sentences, his leadership role in the conspiracy warranted the disparity.  *See Thomas*, 446 F.3d at 1350, 1357.

18

Cintora-Gonzalez points in part to his clean criminal history as a factor weighing in favor of a lighter sentence, but even though the history of the defendant is certainly a consideration, the court also considered the guideline range, the nature and circumstances of the offense, and the need to protect the public from further crimes.  *See* 18 U.S.C. § 3553(a).   Under these facts, Cintora-Gonzalez cannot show his sentence is substantively unreasonable.

B.  Armando-Reyes

1.  Voice identification

Armando-Reyes first challenges the district court's admission of testimony from the government's voice expert.  Generally, we review evidentiary rulings for an abuse of discretion.  *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005).  When a defendant fails to make an objection or argument in the district court, however, review is limited to plain error.[4]  *See United States v. Duncan*, 381 F.3d 1070, 1073 (11th Cir. 2004).

Voice identification testimony can be admitted only after it is determined sufficient evidence supports a finding that "the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  A speaker's voice may be identified by opinion testimony "based on hearing the voice at any time under circumstances that

---

[4] Although Armando-Reyes objected at trial to the testimony as improper expert testimony, he did not challenge the evidence on the ground raised on appeal.  Thus, he has abandoned the arguments made in the district court, *Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012), and we review his new arguments for plain error.

connect it with the alleged speaker." *Id.* 901(b)(5). "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification." *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994). Credibility determinations will not be disturbed on appeal unless the testimony is "incredible as a matter of law," meaning that it relates to "facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009).

Here, the district court did not err, plainly or otherwise, in admitting the voice-identification testimony. Although Armando-Reyes argues to the contrary, the record of the expert's testimony shows that she familiarized herself with his voice through a phone call with him while he was in federal custody awaiting trial. Rule 901(b)(5) requires no more foundation than that. *See* Fed. R. Evid. 901(b)(5). Moreover, it does not matter that the expert could not specifically identify which of the 20 to 30 recorded calls she used to voice-identify him, because, importantly, she was able to voice-identify him in each of the recorded calls introduced into evidence. With a proper foundation in place under Rule 901(b)(5), it then fell to the jury to determine the credibility of her identification testimony, *Brown*, 30 F.3d at 1437, and, there being nothing "incredible" in her testimony, the jury's determination in that regard will not be disturbed, *Flores*, 572 F.3d at 1263.

2.  Sentencing

Armando-Reyes argues, like Cintora-Gonzalez, that the district court clearly erred in refusing to award him a § 3E1.1 reduction.  We conclude the court properly denied the reduction for the reasons discussed previously.

## III.

For the above reasons, we affirm the convictions and sentences for both Cintora-Gonzalez and Armando-Reyes.

**AFFIRMED.**