[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11198
Non-Argument Calendar

_____

D.C. Docket No. 2:12-cr-00212-MHT-CSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICKY NELSON DAWSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 8, 2014)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Ricky Nelson Dawson appeals his 60-month sentence after pleading guilty

to one count of wire fraud in violation of 18 U.S.C. § 1343.  Dawson challenges that sentence on two grounds.  First, Dawson argues that the district court erred in giving him a two-level enhancement for an offense involving ten or more victims pursuant to United States Sentencing Guideline (USSG) § 2B1.1(b)(2)(A) because he reimbursed at least two of the eleven victims.  Dawson also filed a motion to modify the record on appeal pursuant to Fed. R. App. P. 10(e) to include evidence that he reimbursed a third victim.  Second, Dawson argues that the district court clearly erred in determining that his offense conduct warranted a two-level enhancement for using sophisticated means under USSG § 2B1.1(b)(10)(C).  After careful consideration, we affirm Dawson's sentence and deny his motion to modify the record.

I.

Dawson pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343.  As area director of the Rural Utilities Service of the United States Department of Agriculture, Dawson defrauded various local water and electric authorities by way of fraudulent representations and promises.  To accomplish the scheme, Dawson opened a checking account in the name of "Ryal Development Farm d/b/a/ Ricky Nelson Dawson," received checks that were intended as payments to the Department of Agriculture, and without authority, deposited the checks into the "Ryal" account.  Over the course of five years, Dawson deposited

2

checks totaling $6,225,920.76 from ten different local water authorities and one electric utility.  Dawson regularly transferred funds from the "Ryal" account to other personal accounts he kept at different banks.  Dawson also used funds from later checks to make payments to the authorities he had previously defrauded, as well as to the Department of Agriculture.

At sentencing, Dawson objected to two findings made in the presentence report: first, that Dawson's offense involved ten or more victims, see id. § 2B1.1(b)(2)(A)(i), and second, that Dawson's offense involved "sophisticated means," see id. § 2B1.1(b)(10)(C).  The district judge overruled both objections, while noting that he would probably have imposed a lesser sentence if he had sustained either objection.

Dawson now challenges both findings.  Dawson also filed a motion to amend the record under Federal Rule of Appellate Procedure 10(e) because he claims to have new evidence that proves he has reimbursed another victim of his crime since his sentencing.  Though the district court denied a similar motion below, the motion is still pending before this Court.  We address each argument in turn.

## II.

Dawson argues that the district court erred in increasing his offense level by two points based on a finding that his offense involved ten or more victims.  See

3

USSG § 2B1.1(b)(2)(A)(i).  We review de novo the interpretation and application of the Guidelines, including whether someone is a "victim."  United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007).  The Guidelines Application Notes define a "victim" as "any person who sustained any part of the actual loss determined under subsection (b)(1)."  USSG § 2B1.1 comment. n.1.  The Guidelines define "actual loss" as "reasonably foreseeable pecuniary harm that resulted from the offense."  Id. § 2B1.1 comment. n.3(A)(i).

Dawson asks this Court to adopt the reasoning from United States v. Yagar, 404 F.3d 967 (6th Cir. 2005), in which the Sixth Circuit concluded that certain account holders were not victims within the meaning of USSG § 2B1.1(b)(2)(A) because they had been fully reimbursed by third parties following a temporary and minor loss.  Id. at 971–72.  However, in United States v. Lee, 427 F.3d 881 (11th Cir. 2005), this Court specifically declined to follow Yagar.  See id. at 895.  Beyond that, even when we assumed that Yagar's reasoning was correct, we held that people who had been reimbursed were still "victims" under the Guidelines when they "suffered considerably more than a small out-of-pocket loss and were not immediately reimbursed . . . ."  Id.; see also United States v. Nikoghosyan, 408 F. App'x 272, 274 (11th Cir. 2011) (per curiam) ("[O]ur holding in Lee is consistent with the recently updated commentary for § 2B1.1, which defines a 'victim' without regard to whether an individual is subsequently reimbursed.").

4

We are bound to follow this precedent "unless and until it is overruled by this court en banc or by the Supreme Court." United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008) (per curiam) (quotation marks omitted).

Here, Dawson repaid $799,172.79 to the West Dallas Water Authority five months after he took it, and reimbursed $28,000 to the Hobson Water System four months after he took it. The amounts were neither "small out-of-pocket loss[es]" nor were they "immediately reimbursed." Lee, 427 F.3d at 895. Lee's reasoning governs squarely here, and all eleven of the water authorities and electric utilities that suffered losses were "victims" for the purposes of the Guidelines.

We also deny Dawson's related motion to modify the record on appeal. Federal Rule of Appellate Procedure 10(e)(2) provides that "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified" by the parties' stipulation, the district court, or this Court. The Rule "does not empower a district court to modify parties' stipulations or make new findings of fact after docketing of the appeal in the court of appeals." United States v. Smith, 493 F.2d 906, 907 (5th Cir. 1974) (per curiam).[1] Here, because evidence of another reimbursed victim was never introduced before the district

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

court, Dawson may not now supplement our record with this new evidence. We also decline to use our inherent power to supplement the record "in the interests of justice." CSX Transp., Inc. v. City of Garden City, 235 F.3d 1325, 1330 (11th Cir. 2000). Because we are bound by our prior decision in Lee, evidence of an additional victim that was reimbursed will not affect that outcome. Finally, even if we ignore Lee, it is not necessary to supplement the record in order to reduce the number of victims below ten. For each of these reasons, Dawson's motion is denied.

## III.

Dawson separately argues that the district court clearly erred in determining that his offense conduct involved "sophisticated means," resulting in a two-level enhancement under USSG § 2B1.1(b)(10)(C). According to the Guidelines Notes, "sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense" and is often indicated by "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." USSG § 2B1.1 comment. n.8(B). This Court has said that "[t]here is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated." United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010).

6

On clear error review, we reverse the district court only if "we are left with a definite and firm conviction that" it erred.  Id. (citation omitted).

Under this deferential standard of review, we cannot say that the district court clearly erred in its "sophisticated means" determination.  Dawson's scheme was carried out over a five-year period.  He used his managerial position with the Department of Agriculture and his specialized knowledge of the Department's loan and grant programs to produce forged and fraudulent documents containing pre-payment and installment plans and instructing authorities to remit overpayments.  See United States v. Clarke, 562 F.3d 1158, 1166 (11th Cir. 2009) (noting in approving a "sophisticated means" determination that the scheme "covered a three-year period and required intricate planning").  To transfer the money to himself and conceal that transfer, Dawson created a fictitious company, "Ryal Development," for ease in altering and depositing checks made out to "Rural Development."  See USSG § 2B1.1 comment. n.8(B) (noting that sophisticated means are often indicated by "[c]onduct such as hiding assets . . . through the use of fictitious entities").  He further concealed his actions by transferring the stolen money among multiple accounts, and by using the money from later thefts to reimburse victims of earlier thefts.  In sum, he received eighteen checks from eleven different water or electric authorities totaling over $6 million.  While each individual act may not have been particularly "sophisticated," Dawson's overall

7

scheme could surely be said to involve "sophisticated means."

Although the three cases Dawson cites— United States v. Williams, 509 F. App'x 941 (11th Cir. 2013) (per curiam), United States v. Fuller, 500 F. App'x 831 (11th Cir. 2012) (per curiam), and United States v. Jenkins, 497 F. App'x 931 (11th Cir. 2012) (per curiam)—may well have involved schemes more sophisticated than the one here, this Court has never established those cases as a floor for the "sophisticated means" enhancement.  Dawson's conduct involved numerous steps, affected multiple victims, spanned several years, and required specialized knowledge.  On this evidence, the district court did not clearly err in applying the enhancement.

## IV.

The district court's sentencing determination is **AFFIRMED** and Dawson's motion to modify the record on appeal is **DENIED**.